THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EUGENE WISNIEWSKI, Defendant-Appellant.

(No. 71-136;

Fifth District—November 28, 1972.

Kenneth L. Gillis, of Defender Project, of Chicago, for appellant.

Robert H. Rice, State's Attorney, of Belleville, (James W. Jerz, of Model District State's Attorney's Office, of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant was indicted and tried before a jury for the crime of murder. A verdict of guilty of voluntary manslaughter was returned by the jury and defendant was sentenced to a term of imprisonment of not less than five nor more than ten years.

In his appeal defendant raises the issue whether the trial court erred in failing to grant his motion for new trial which was based upon the failure of the State to disclose the existence of a piece of water pipe found at the scene of the alleged crime.

We reverse and remand for a new trial.

The pertinent evidence discloses that defendant and deceased had known each other for some period of time and worked together in one of the construction trades. Deceased was known to defendant to be disagreeable and even violent when intoxicated. Following an extended period of drinking on the date of the shooting defendant and decedent returned to the house owned and lived in by defendant and in which decedent also lived in an upstairs room. Upon arriving home defendant went to bed. Sometime later he was awakened by deceased who had come downstairs into defendant's portion of the house. Deceased was unruly and demanded that defendant produce a pistol so that he (deceased) could settle some other "trouble." Defendant noticed at this time that deceased had a length of pipe in his hand. Upon telling deceased that he did not have a gun, deceased became abusive and struck at defendant in the hallway. Deceased did not strike defendant with the pipe at this time and the blow neither injured defendant nor apparently alarmed him. Defendant told deceased to go back upstairs to bed since he was drunk. Defendant proceeded to follow deceased back upstairs for the stated purpose of protecting deceased from injury if he should fall down on the stairs. Upon reaching the top of the stairs deceased turned upon defendant and struck out at him with the pipe he had been carrying in his hand. Defendant told deceased to get his things together and leave the house. Defendant thereupon went back downstairs and deceased returned to his room. Moments after the incident at the top of the stairway, defendant returned upstairs with a .22 caliber rifle, went to deceased's room, fired a single shot from the rifle

in the direction of a window, and again demanded that deceased get out of the house. Deceased, grumbling, complaining, and making threatening remarks, began to put his things into his suitcase, but then again picked up the pipe and advanced on defendant threatening him with the pipe. Although defendant was standing just outside the room immediately adjacent to the stairway, he stepped into the room when deceased began to come toward him with the pipe and shot the .22 rifle several times in deceased's direction, killing him with four or five shots. After the shooting defendant cleaned up some blood, put the deceased in his car and took him to a local hospital. Upon arrival at the hospital defendant saw several police cars, became frightened, and disposed of the body of deceased near the parking lot of a tavern.

At the trial the defendant interposed the affirmative defense of self-defense and in his testimony told of deceased's advancing upon him while holding a piece of pipe in his up-raised hand. In his closing argument to the jury the prosecutor commented on defendant's testimony, "* * * this defendant shot the deceased, not in a last desperate action to save his life, not after he was attacked with a pipe, that is not it." Later in his closing argument the prosecutor also remarked, "The pipe that has been talked about repeatedly by the defense counsel, I submit I don't know where it is. The police officers were thorough in their investigation. Forty-four exhibits in this case and there is no pipe."

Prior to the trial the defendant filed a motion for an order directing the state's attorney to produce "any physical evidence, such as weapons, blood, or items of personalty of the defendant seized by the State or in the possession of the State," and a motion for "copies of any and all reports made to the State by any crime lab or testing facility concerning physical evidence in this case." Defendant's motions were allowed but the State's response to these motions indicated no physical evidence, no "weapon," no blood, no blood testing or physical evidence.

After the trial but before defendant was sentenced defendant's attorney and a police officer who participated in the investigation of the shooting became involved in a discussion of the case at a social event. The police officer referred to a piece of pipe which was found under a pile of rags in a hallway adjacent to the room where the shooting occurred. This disclosure resulted in defendant's motion for new trial based upon newly discovered evidence. A hearing was held by the court where it was established that a piece of pipe was found by the investigating officers who thought it had blood stains on it and submitted it to the State crime laboratory for tests but the resultant report showed the "blood stains" to be rust spots. The length of pipe was not listed in the inventory of items examined by the State crime laboratory. The pipe was

described as appearing to be a water pipe approximately 18 inches long with an elbow on one end. The defendant in his testimony at the trial had stated that the pipe wielded by deceased was a straight length.

During the hearing on the motion for new trial the court remarked, "The court was under the impression that the pipe story was purely imaginary \* \* \*. The jury may have thought there was a piece of pipe—I don't know—it certainly was a missing link in the chain of events. We will continue this matter, if the state's attorney announces that there wasn't a piece of pipe and without the piece of pipe under the circumstances, there wasn't much proof that there was. \* \* \* I don't know, they might have felt 'Where was the piece of pipe.'" At the conclusion of the hearing the motion for new trial was denied.

We think it cannot be seriously argued that the length of pipe found by the police officers could not be important to defendant's position that he acted in self-defense. Having heard defendant describe the assault by the deceased while wielding a piece of pipe in a threatening manner the jury could very well wonder, as noted by the trial court, that if there was such an assault where was the piece of pipe? The failure to produce it at the trial would place a serious strain upon the credibility of defendant's story and the prosecuting attorney emphasized the lack of credibility of the story by pointing to the absence of the pipe. The State seeks to de-emphasize the importance of the pipe by pointing out that it was found not in the room but in an adjacent hallway under a pile of rags and pointing to the physical difference of the pipe found (with an elbow on one end) to that of the pipe described by defendant (a straight length). However, we think these factors cannot be controlling as we consider them here. The pipe has not been furnished to the defense for their investigation and examination nor has the circumstances of its discovery by the police officers and testing by the State crime laboratory been subjected to examination and cross-examination by the defense. We cannot say at this stage of the proceeding that the length of pipe discovered by the police officers was or was not, could or could not, be the length of pipe described by defendant.

Supreme Court Rule 412(c) (Ill. Rev. Stat., ch. 110A, sec. 412(c)), makes it incumbent upon the State to disclose to the defense, upon demand, any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce his punishment therefor. In *People v. Howze* (1972), 7 Ill.App.3d 60, 286 N.E.2d 507, this court recently considered the background of this Rule and further discussion here is unwarranted. That the Rule is applicable here, that it was properly invoked, and that it was discounted or disregarded to defendant's prejudice, cannot be

doubted. The trial court erred in the denial of defendant's motion for a new trial. Upon learning of the discovery of the length of pipe and being mindful of its importance to defendant's defense, the trial court should have set aside defendant's conviction, ordered the State to afford the defendant and his attorney an opportunity to examine the length of pipe and subject it to testing, and ordered a new trial.

Reversed and remanded for a new trial.

G. MORAN, P. J., and EBERSPACHER, J., concur.