THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DENNIS FREY, Defendant-Appellant.

Fifth District   No. 75-215

Opinion filed July 7, 1977.

Michael J. Rosborough and A. Michael Kopec, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert H. Howerton, State's Attorney, of Marion (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

This is a consolidated appeal. Defendant, Dennis Frey, appeals to this court from the denial after hearing of his petition for review under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1975, ch. 38, par. 122—1 *et seq.*), and he also pursues a direct review of judgments of conviction entered on his pleas of guilty.

Defendant and Mike Ovington were charged on April 19, 1974, by a two-count information with the offenses of burglary and theft over $150. An indictment bearing No. 74—CF—45 was subsequently filed in the circuit court of Williamson County charging them with the same offenses. On September 10, 1974, the grand jury of Williamson County returned four additional indictments against defendant. Defendant was charged with unlawful possession of cannabis (more than 30 grams but not more than 500 grams) by an indictment numbered 74—CF—68, and he was charged with three offenses of burglary by indictments numbered 74—CF—105, 106 and 107. On January 8, 1975, defendant pleaded guilty to all charges and was subsequently sentenced to concurrent terms of imprisonment of two to eight years on each charge of burglary and on the

theft charge and a term of one to three years on the cannabis offense. Defendant filed a notice of appeal from these judgments of conviction, and the appeal was held in abeyance during the pendency of his post-conviction action.

The issues presented in the dual appeal to this court are: (1) whether defendant was denied the effective assistance of counsel due to the conflict of interests of his court-appointed attorney; and (2) whether the conviction of defendant on the theft offense was error when it arose from the same conduct as one of the burglary offenses.

The factual situation in this cause is somewhat unclear since the record is too insufficient to inform us exactly what involvement defendant's court-appointed counsel, the public defender of Williamson County, had in cases involving Mike Ovington or what specific charges were lodged against Mr. Ovington.

It is apparent that initially the public defender was appointed to represent both defendant and Mr. Ovington on the burglary and theft offenses charged in case No. 74—CF—45. However, on May 13, 1974, the public defender was allowed to withdraw as defendant's counsel on these charges because of a potential conflict of interest arising from his representation in another matter of a juvenile who had been granted immunity from prosecution for any participation in the acts upon which these charges were based in exchange for a promise to testify for the State. The court subsequently appointed a different attorney to represent defendant on these particular charges of burglary and theft and on the possession of cannabis charge. The public defender was appointed to represent defendant on the three burglaries charged in indictments 74—CF—105, 106, and 107.

Based upon the record sheet for case No. 74—CF—45 and other matters of record, it appears, however, that the public defender continued to represent Ovington on the charges of 74—CF—45, was involved in the entering of a negotiated plea of guilty, and participated in a sentencing hearing which resulted in Ovington's being sentenced to five years' probation. Both the entry of plea and sentencing of Ovington occurred after defendant was sentenced. Ovington's probation order lists three other case numbers, 74—CF—30, 44, and 46, upon which no sentences were entered. There is nothing in the record to clearly show what charges were involved in those cases or whether the public defender was Mr. Ovington's attorney of record on them as well. There is, however, considerable evidence which justifies our inferences that those cases involved the same acts of burglary alleged against defendant in 74—CF—105, 106, and 107 and that the public defender was also Mr. Ovington's counsel in those cases.

First, we note that an assistant State's Attorney for Williamson County,

in reciting the factual basis for defendant's guilty pleas, stated that Mike Ovington would be a witness for the prosecution on the burglary charges of 74—CF—45, 106 and 107. No one was mentioned as a State's witness for the 74—CF—105 burglary. It is apparent that Ovington could hardly have had any testimony of value on these charges unless he was directly involved. Second, based upon a telephone conversation he had with the public defender of Williamson County during the post-conviction hearing, the Williamson County State's Attorney testified: (1) that the public defender represented both Mr. Ovington and defendant Frey; (2) that prior to May 13, 1974, he informed the public defender that Ovington would be granted immunity and the public defender thereafter withdrew as defendant's counsel in 74—CF—45; (3) that prior to January of 1975 (when defendant pleaded guilty to all charges) he informed the public defender that the State was going to grant Ovington immunity in 74— CF—105, 106, and 107; and (4) the public defender continued to represent defendant in these cases. Finally, defendant testified without contradiction that he knew Ovington had had pending charges arising out of the same transactions as those in 74—CF—105, 106, and 107, and that he was represented in those cases by the public defender.

Defendant further testified that he was told by the public defender that Ovington was going to testify against him if he went to trial and that he pleaded guilty after the public defender told him there was no way he could avoid conviction with Ovington as a State's witness.

■■ It is necessary to consider at the outset the State's contention that since defendant pleaded guilty he waived the issue of ineffective assistance of counsel under the rule that a voluntary plea of guilty waives any prior nonjurisdictional defect including constitutional violations. (*People v. Stanley*, 50 Ill. 2d 320, 278 N.E.2d 792.) In the two cases that our supreme court has decided which involved this type of issue in which the defendant had pleaded guilty, the court has refused to find that defendant knowingly waived his right to representation by court-appointed counsel free from any conflict of interests when there was no affirmative evidence either that defendant was admonished as to the significance of the potential conflict or had a full understanding of such conflict of interests. (See *People v. Meyers*, 46 Ill. 2d 149, 151, 263 N.E.2d 81, and *People v. Kester*, 66 Ill. 2d 162, 168, 361 N.E.2d 569.) There is no such evidence here; consequently, we do not find that this issue was waived. As the Supreme Court stated in *Glasser v. United States*, 315 U.S. 60, 70, 86 L. Ed. 680, 699, 62 S. Ct. 457, 465, after holding that the sixth amendment contemplates that the fundamental right to assistance of counsel be untrammeled by any court's requirement that one lawyer shall simultaneously represent conflicting interests: "To preserve the protection of the Bill of Rights for hard-pressed defendants, we indulge every

reasonable presumption against the waiver of fundamental rights." See also *People v. Brown*, 40 Ill. App. 3d 562, 352 N.E.2d 15.

Defendant contends that the situation, in which defendant's counsel was simultaneously engaged in representing Ovington in plea negotiations for recommendations of probation and immunity from some charges in exchange for his promise to testify against defendant, and in evaluating the future course of defendant's defense and the chances of its success or failure, constitutes a *per se* conflict of interests which deprived defendant of the effective assistance of counsel in cases 74—CF—105, 106, and 107.

The State responds that defendant's appointed counsel's ability to assess the State's case was unaffected by any potential conflict of interest. It notes that there are no Illinois cases in which a judgment entered on a plea of guilty has been reversed because of a conflict of interest created by defendant's counsel's responsibility to another defendant; the majority of the cases on counsel's conflict of interest have involved the situation where defendant has gone to trial and the co-defendant, represented in other matters by defendant's attorney, has testified against the defendant.

Both the State and defendant have set forth arguments in their briefs pertinent to whether the defendant was prejudiced by the conflict of interest, but we shall not include them here since, in our view of this case, we are not required to address them.

Defendant also contends that this conflict tainted defendant's pleas in cases 74—CF—45 and 68, in which defendant had different counsel, and we, therefore, should reverse the judgments on those charges as well as those in which the public defender represented him and remand this cause to allow him to plead anew to all of the charges. He argues in support of this contention that all of the pleas were negotiated as a unified whole and taken at one hearing and that the State may not have agreed to recommend the sentences it did if defendant had refused to plead to all of the charges. It is also noted that the evidence of record relating to defendant's decision to plead guilty shows that he did so on the public defender's advice.

The State, in response, contends that the public defender's advice to plead guilty could not possibly have affected defendant's decision to plead guilty in cases 74—CF—45 and 68 in which he was represented by independent counsel. The State stresses the facts that: there is no allegation that the representation of defendant's independent counsel was ineffective; there is no evidence that the public defender offered advice on these charges or that defendant did not have the separate advice of his other counsel with respect to the charges upon which he represented him; and there was no suggestion that the pleas were in fact part of a "package deal" and not independently negotiated.

After consideration of the facts of this case and the pertinent case law and principles cited therein, we are of the opinion that the judgments in the burglary cases 74—CF—105, 106, and 107 must be vacated and this cause remanded for new proceedings. Defendant will be allowed to enter new pleas if desired after he has consulted with different court-appointed counsel. We, however, do not believe the conflict of interests present here can be found to have affected the pleas in 74—CF—45 and 68. Accordingly, the judgments in those cases are affirmed.

Illinois has adopted a *per se* rule of reversal where a defendant's counsel's conflict of interests arises from a commitment to others. (*People v. Halluin*, 36 Ill. App. 3d 556, 344 N.E.2d 579; *People v. Fuller*, 21 Ill. App. 3d 437, 315 N.E.2d 687, and cases cited therein.) Illinois has also apparently adopted a *per se* rule when the conflict of interests is not created by a commitment to another defendant but rather arises from some matter which might make the attorney unwilling to represent the defendant effectively (*e.g., People v. Kester* (defendant's counsel was prosecutor involved in case during preliminary stages); *People v. Meyers* (defendant's wife's dramshop action represented by same attorney on contingent fee). What this means as a practical matter for a defendant whose counsel was in such a conflict situation is that he need not show that he was actually prejudiced. In these situations it is almost impossible to discern or prove the subtle effect which a conflict of interest may have had on an appointed counsel's representation (*People v. Meyers; People v. Kester*); therefore, a reviewing court is generally unable to conclude that defendant has not been prejudiced or denied the undivided allegiance of counsel (*People v. Meyers; People v. Augustus*, 36 Ill. App. 3d 75, 343 N.E.2d 272). As stated in *Glasser v. United States*, 315 U.S. 60, 76, 62 S. Ct. 457, 467, 86 L. Ed. 680, 702, and adopted by our supreme court in *People v. Ware*, 39 Ill. 2d 66, 233 N.E.2d 421, and *People v. Stoval*, 40 Ill. 2d 109, 239 N.E.2d 441: "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."

In *People v. Kester* our supreme court held that where an assistant State's Attorney had personally been involved in the initial stages of prosecution of a defendant in a particular criminal proceeding and later left the office and became court-appointed defense counsel for defendant in the same proceeding, there is a potential conflict of interests, and defendant's conviction, entered upon pleas of guilty, would be reversed and a new trial ordered. The potential conflict was that counsel may have already convinced himself of defendant's guilt while a prosecutor. The court held that it was unnecessary for the defendant to show actual prejudice resulting from the potential conflict and cited with approval the following statement from *People v. Stoval*, 40 Ill. 2d 109, 113, which

explains the policy reasons behind the rules developed for conflict of interests cases:

> " 'There is no showing that the attorney did not conduct the defense of the accused with diligence and resoluteness, but we believe that sound policy disfavors the representation of an accused, especially when counsel is appointed, by an attorney with possible conflict of interests. It is unfair to the accused, for who can determine whether his represention was affected, at least, subliminally, by the conflict. Too, it places an additional burden on counsel, however conscientious, and exposes him unnecessarily to later charges that his representation was not completely faithful. * * *' " 66 Ill. 2d 162, 166-67.

In *People v. Ware*, one defendant pleaded guilty and, prior to his sentencing, testified for the State at his co-defendant's trial. The court held that the attorney who represented both necessarily had "to assume a position of ambivalence toward the defendant" since he had conflicting obligations to represent both defendants who obviously had antagonistic positions. Defendant's judgment of conviction was reversed and the cause remanded for a new trial.

Similarly, courts have reversed judgments and remanded causes when the facts were such that the State could logically argue that the responsibility of counsel to a co-defendant was at an end. In *People v. Johnson*, 46 Ill. 2d 266, 265 N.E.2d 869, charges were dismissed against one co-defendant represented by defendant's appointed counsel. The co-defendant testified against defendant at trial and defendant was found guilty. The court found that, while it might be technically true that the attorney-client relationship with the co-defendant was severed, it could not be said that the defendant received the undivided allegiance of his counsel. This court in *People v. Augustus* reached the same conclusion in a situation where a co-defendant confessed to a crime, implicated the defendant and testified against defendant, even though the co-defendant had already been sentenced prior to giving his testimony.

■■ We believe the conclusion is inescapable that we must reverse the judgments in the cases in which defendant was represented by the public defender, 74—CF—105, 106, and 107, without any determination as to actual prejudice. The fact that Mike Ovington never testified against defendant is insufficient to distinguish this case from the cases noted above. The possibility of conflict is greater here, where counsel still was actively involved in Mr. Ovington's cases, than was the situation in either *Kester, Johnson,* or *Augustus.* In *Kester,* counsel was no longer associated with the State's Attorney's office; in both *Johnson* and *Augustus,* the final disposition of the co-defendant's cases was made *prior* to defendant's. We believe that counsel's dual representation here faced him with a situation

where he could not give full weight to the interests of both defendants because of their divergent positions. Consequently, it cannot be said that under these circumstances the defendant received the undivided allegiance of his counsel.

We are not persuaded that defendant's pleas of guilty to the charges in which he was represented by an independent counsel were "tainted" by the conflict situation which existed because of the public defender's representation of Mr. Ovington. The argument of the State on this point is well taken. There is no evidence whatsoever that the plea bargain made on the charges already discussed was granted in consideration of defendant's entering guilty pleas to the offenses charged in cases 74—CF—45 and 68. Defendant was represented in these cases by an attorney who was not involved in the conflict of interest situation. Moreover, there is no evidence that this counsel did not competently represent defendant or offer him proper and separate advice with respect to these charges. Consequently, we affirm the judgments and sentences entered upon defendant's respective pleas of guilty to the offenses of burglary and possession of cannabis in case Nos. 74—CF—45 and 74—CF—68.

The final issue for resolution is whether the conviction and sentence for theft over $150 in case No. 74—CF—45 must be reversed. Defendant contends that this offense arose from the same conduct as the burglary offense charged in that case, was not independently motivated, and consequently only the conviction and sentence for burglary, the more serious offense, may stand. (*People v. Williams*, 60 Ill. 2d 1, 322 N.E.2d 819.) Before reaching the merits of this contention, we must decide whether the State is correct in its assertion that this court is without jurisdiction to address defendant's theft conviction.

The State directs our attention to *People v. Lowe*, 30 Ill. App. 3d 49, 331 N.E.2d 639. In *Lowe*, defendant had been found guilty after a jury trial of aggravated assault and aggravated battery but was sentenced only on the aggravated battery offense. Defendant filed a notice of appeal in this court addressed solely to the conviction and sentence on the aggravated battery charge. Under these circumstances, this court held that our jurisdiction was limited to the issues with respect to the judgment on the aggravated battery charge; consequently, we found that we were precluded from deciding whether defendant's conviction for aggravated assault must be reversed because it arose out of the same conduct which was the basis for the aggravated battery conviction. The State argues that *Lowe* controls our disposition of defendant's final issue because defendant's notice of appeal lists "4 counts of Burglary, 1 poss. cannabis" as the judgments of conviction appealed from. We cannot agree.

█ It is apparent from the wording of *Lowe* that the notice of appeal there involved was absolutely void of any reference to the aggravated assault charge. We believe its reasoning is inapplicable to the case at hand.

All but the most narrow and technical reading of the instant notice of appeal would indicate that defendant was appealing from all the judgments entered below, including the conviction of theft over $150. The notice of appeal indicates that appeal is taken from the final judgment entered in case Nos. 74—CF—45, 68, 105, 106, and 107. It also indicates that the appeal is from the judgment, guilty of all charges. We believe that this is clear enough indication that defendant is appealing from judgments on both the burglary and theft counts of 74—CF—45. We are not unmindful that the notice of appeal lists the offenses as "4 counts of burglary, 1 poss. cannabis"; however, we note that the judgment order may have helped to engender some confusion since it indicates that the crime defendant was found guilty of in case No. 74—CF—45 was "Burglary-Theft."

Subsequent to the time this case was argued and taken for opinion, our supreme court filed its opinion in *People v. King*, 66 Ill. 2d 551, 363 N.E.2d 838. We find that *King* controls our disposition of this issue. In light of its holding we are compelled to reject defendant's contention and uphold his conviction for theft over $150, as well as for burglary, in case No. 74—CF—45.

The court in *King* notes that prior to 1970 cases construing *People v. Schlenger*, 13 Ill. 2d 63, 147 N.E.2d 316, "focused solely on the defendant's acts and not on the motive or purpose behind their performance. If the offenses were based on a single act, as in *Schlenger*, then only the conviction for the most serious offense was permitted." (66 Ill. 2d 551, 561-62.) However, in 1970, *People v. Stewart*, 45 Ill. 2d 310, 313, 259 N.E.2d 24, expanded the meaning of "same conduct" or "same transaction" to include consideration of the defendant's motivations. The court reversed defendant's conviction of aggravated battery because it found nothing in the record to suggest that "the acts which constituted the offense of aggravated battery were independently motivated or otherwise separable from the conduct which constituted the offense of attempted robbery." 45 Ill. 2d 310, 313.

Since 1970, cases have applied both the "separate and distinct act" test and the "independent motivation" test. In the opinion of the court, the reviewing courts have consequently reached inconsistent results. To remedy this situation, the supreme court in *King* has explicitly rejected the "independent motivation" test as a standard for determining whether multiple convictions and *concurrent sentences* are permissible.[1] As stated by the court:

[1] The supreme court's rejection of the test is limited solely to concurrent sentences. The court notes that the prejudicial effect of double punishment for crimes arising from multiple acts motivated by essentially the same criminal objective is apparent and has been recognized by the legislature. (See Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(a).) Defendant's criminal objective, therefore, is relevant only in the determination of whether consecutive sentences can be imposed.

"Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. 'Act,' when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense. *We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered.*" (Emphasis added.) 66 Ill. 2d 551, 566.

■■ Applying this test to the facts before us, we observe that the offenses of burglary and theft are based on separate acts, each requiring proof of different elements. Even though the intent to commit a theft or felony is one element of the crime of burglary, theft is not by definition a lesser included offense of burglary. Accordingly, the conviction and sentence for theft over $150 in case No. 74—CF—45 may stand.

For the foregoing reasons, defendant's pleas of guilty to the offenses of burglary and judgments entered thereon in 74—CF—105, 74—CF—106, and 74—CF—107 are vacated. This cause is remanded to the circuit court of Williamson County to permit defendant to plead anew to these charges. Defendant's convictions of burglary and theft over $150 in 74—CF—45 and possession of cannabis in 74—CF—68 are affirmed.

Affirmed in part, and vacated in part and remanded.

CARTER, P. J., and EBERSPACHER, J., concur.