THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RONNIE BAXTROM, Defendant-Appellant.

Fifth District   No. 77-50

Opinion filed May 12, 1978.

KARNS, J., concurring.

Michael J. Rosborough, of State Appellate Defender's Office, of Mt. Vernon, and Bruce Stratton, of State Appellate Defender's Office, of Springfield, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Robert L. Craig, Assistant State's Attorney, and Edward J. Blake, Jr., law student, of counsel), for the People.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

Defendant Ronnie Baxtrom and co-defendants Robert Lofton and Edwin Washington were charged in the circuit court of St. Clair County with the offenses of attempted murder and armed robbery. The county public defender was appointed to represent the three men. Pursuant to negotiations, the case against Washington was severed from the other two and he subsequently pleaded guilty to a reduced charge. Motions for severance by defendant and Lofton were denied and they were thereafter jointly tried before a jury. Following trial, defendant and Lofton were found guilty as charged. From the judgment entered, defendant brings this appeal.

On appeal defendant presents the following issues for review: (1) whether the office of the public defender was in conflict of interest in jointly representing defendant and Lofton; (2) whether the State's failure to produce requested information denied defendant a fair trial; (3) whether defendant was proved guilty beyond a reasonable doubt; (4) whether the prosecution made improper comments during its closing argument; and (5) whether the two concurrent sentences of 25 to 75 years' imprisonment imposed upon defendant are excessive.

While we find sufficient evidence supporting a guilty verdict, we also

find merit to defendant's first two contentions, warranting a new trial in this cause.

The charges herein stem from the armed robbery of Beulah Hodges, owner of the Hodges Grocery Store, and the shooting of her son, Stanley, which took place at noon on May 17, 1976. At trial, Hodges testified that at the time of the occurrence she was behind a meat counter at one end of the store while her son was at the checkout counter at the other end of the store. She stated that Lofton came to the meat counter and ordered some frankfurters. She handed these to him and then she saw him go to the checkout counter. Hodges began to serve her next customer when she heard a shot fired. Fearful, Hodges laid down on the floor and she saw Lofton, with a gun in his hand, walking toward her from the direction of the checkout counter. At trial Hodges stated that she was positive of her identification of Lofton based on her observation of him made while serving him as a customer. She further testified that Lofton then ordered her to give him money. Following his orders, she handed him cash from the store's office and she gave her purse to him after which Lofton left. Hodges stated that later that day, she identified a photograph of Lofton from a group of photographs given her by the police. On cross-examination, Hodges stated that during the incident there were only five people in the store; herself, her son, a customer at the meat counter who she knew as Miss Pearl (Lillian Chamberlin), Robert Lofton who was dressed in blue denim, and another man who she could not identify because he was at the checkout counter with his back toward her.

Next, Stanley Hodges testified stating that he was in the store's office near the meat counter when three men entered the store. Also in the store at that time was a lady customer. Stanley walked behind the meat counter and to the checkout counter. He stated that he saw a man who he was unable to identify, at the meat counter, another man in a green jacket who was in a middle aisle, and a third man at the cash register. Stanley identified the third man as Edwin Washington. He stated that Washington paid him 26¢ for a product. Stanley, however, dropped one of the coins onto the floor. As he bent over to pick it up, Washington stepped aside, and the man in the green jacket suddenly placed a hand on Stanley's face, turned it toward him, and then shot Stanley in the face. Stanley positively identified defendant, Ronnie Baxtrom, as the man in the green jacket who shot him. He stated that he was able to observe defendant face to face at the time of the shooting. Stanley testified that on the following day, while in the hospital, he identified defendant's photograph from a group of photographs that had been shown to him by the police.

On behalf of defendant, Michael Durbin, an investigator with the office of the public defender, testified that he interviewed Stanley who told him

that at the time of the shooting, he (Stanley) had been looking only at the midsection of the green jacket on the man who shot him.

Neither defendant nor Lofton testified at trial.

As previously mentioned, the lower court appointed the public defender, David Hoffman, to represent defendant, Lofton and Washington. Hoffman, in turn, assigned defendant's case to Assistant Public Defender Rick Sturgeon, he further assigned Washington's case to Assistant Public Defender Roger Hay, and he assigned Lofton's case to himself. At the pretrial hearing on the defense motions for severance, Hoffman argued that severances were necessary because of "confusion" in the identification evidence against defendant and Lofton, and because Washington had made a written statement inculpating Lofton. The prosecution informed the court that an agreement had been negotiated with Washington whereby he would testify at the upcoming trial on behalf of the State in return for a dismissal of the charges against him. (We note that Washington did not in fact subsequently testify.) The court then granted a severance as to Washington but denied it as to defendant and Lofton. Hoffman, joined by Sturgeon, then moved to withdraw as counsel for Lofton and defendant, stating: "We have my office representing all three co-defendants, one being given immunity to testify against the other two." The court, noting that neither Lofton nor defendant were present at the hearing, denied the motion to withdraw "at this time." The record is silent as to whether this motion was again raised at any time prior to or during trial. However, defense motions for severance were again raised on the day of trial. They were based on the "inconsistent defenses" of defendant and Lofton. Hoffman stated to the court that, during the upcoming trial: "I would be arguing that Mr. Washington and Mr. Baxtrom committed this offense * * * [and Sturgeon would make] a similar argument toward the client Mr. Lofton." The court denied the motions. During trial, subsequent motions for severance, on the same grounds, were also denied.

The record shows that defense counsel followed a strategy of attempting to characterize the evidence as proving that only two men, and not three, had entered the store and committed the offenses. On behalf of Lofton, Hoffman argued during closing argument that the crimes were committed only by defendant and Washington. On defendant's behalf, Sturgeon accused Lofton and Washington of being the perpetrators. Consonant with defense strategy, Hoffman objected at one point during trial, to a comment by the prosecutor that suggested the fact that Hoffman and Sturgeon worked for the same office. Hoffman stated, outside the presence of the jury:

"* * * I'm doing a balancing act in my office trying to keep the

two cases separate, not interfering with Mr. Sturgeon's investigation and conducting investigation on my own. That's the only way I know of handling a case in which I can neither withdraw from one of the defendants as I have attempted, nor to sever the two defendants which I have attempted. Left with this choice, the only choice I have left, is to maintain before the jury, the appearance of separateness of the two attorneys. * * * I feel that I am defending one man, not two. That's the only way I can look at this and handle this case properly."

Following trial, in defense motions for a new trial, the question of a conflict of interest on the part of defense counsel was squarely raised. In arguing the issue, Hoffman, joined by Sturgeon, stated that he was "prohibited" from placing Lofton on the witness stand in order to accuse defendant of committing the crime. He further stated:

"[T]he reason I feel so constrained in this area and the problem I see throughout the entire trial is that Mr. Sturgeon and I work in the same office. I am, in fact, for all practical purposes his boss. I'm the Public Defender, he's an Assistant Public Defender. * * * And we get into a situation where the natural defense is to accuse each other, and then you're concerned with all types of questions as to what information I have that I would not normally have, had I not been in the same office with Mr. Sturgeon."

In its order denying a new trial, the court stated in part: "Defendants further claim they were prejudiced because their attorneys were both Public Defenders. Although there is some merit in this argument, nothing has been shown to be so prejudicial as to require a new trial."

On appeal defendant contends that his and Lofton's defenses were inconsistent and, consequently, he was denied the effective assistance of counsel due to the joint representation provided by the office of the public defender.

■■ ■ The sixth amendment right to effective assistance of counsel requires that the person represented shall receive the undivided loyalty of counsel. (*Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457.) This fundamental right is violated whenever defense counsel is placed in a duplicitous position of having to represent conflicting interests restraining the full exercise of his independent professional judgment on behalf of an accused. (*Glasser v. United States; Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173.) As stated by the court in *Holloway*:

"Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. For example, in this case it may well have precluded defense counsel for Campbell

from exploring possibility of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing recommendation would be acceptable. Generally speaking, a conflict may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another. Examples can be readily multiplied. The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations has effectively sealed his lips on crucial matters." (435 U.S. 475, 489-90, 55 L. Ed. 2d 426, 438, 98 S. Ct. 1173, 1181-82.)

The mere fact, however, of a lawyer's multiple representation of co-defendants does not itself constitute a conflict of interests, nor is such prohibited *per se* by the constitutional guarantee of effective assistance of counsel. (*Holloway v. Arkansas; People v. Durley*, 53 Ill. 2d 156, 290 N.E.2d 244.) The problem then arises of delineating the limits to be placed upon multiple client representations, particularly bearing in mind such considerations as the difficulty in determining the existence of a conflict and in measuring its consequent prejudicial impact, and in defining the nature and scope of the obligations of the trial court and defense counsel in assuring that defendants are not deprived of their fundamental right.

Thus far, the United States Supreme Court has considered constitutional limitations to multiple client representations, where such has given rise to a claimed conflict of interests, in only two cases, *Glasser* and *Holloway*.

In *Glasser*, the trial court appointed Glasser's attorney to simultaneously represent a co-defendant, Kretske, over the attorney's objection that such raised a possible conflict of interests in that his representation of both men might lead the jury to link the two together. On appeal from the subsequent convictions, the court reversed the judgment entered against Glasser, and remanded the cause, based upon a clear record indication of restraint by the attorney due to the conflicting interests of the clients. Specifically, the court found that the attorney had failed to cross-examine a government witness, whose testimony linked Glasser to the charged conspiracy, and had failed to object to the admission of arguably inadmissible evidence because of his desire to protect the interests of Kretske. Having identified from the record a conflict of interests, the court declined to measure its prejudicial effect, stating:

"The right to have the assistance of counsel is too fundamental and

absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." 315 U.S. 60, 76, 86 L. Ed. 2d 680, 702, 62 S. Ct. 457, 467.

In *Holloway*, a public defender was appointed to represent three co-defendants but he twice timely moved for the appointment of separate counsel. This was based on the claim that he had received confidential information from the co-defendants and that one or two of them might testify at trial, in which case his ability to cross-examine them would be restricted. The motions were denied by the court. Eventually, at trial, all three co-defendants testified; however, none of them incriminated any of the others. Following their convictions they appealed to the State Supreme Court, which affirmed the convictions on the basis that the record showed no actual conflict of interests and no resulting prejudice. The United States Supreme Court, however, reversed the judgments, and remanded the causes, upon the finding that the statements of defense counsel were sufficient to establish the existence of a potential for a conflict of interests. The court reasoned that:

"[M]ost courts have held that an attorney's request for the appointment of separate counsel, based on his representations as an officer of the court regarding a conflict of interests, should be granted. (Citations.) In so holding, the courts have acknowledged and given effect to several interrelated considerations. An 'attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial.' (Citation.) Second, defense attorneys have the obligation, upon discovering a conflict of interests, to advise the court at once of the problem. (Citation.) Finally, attorneys are officers of the court and, 'when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath.' (Citation.)" (435 U.S. 475, 485-86, 55 L. Ed. 2d 426, 435, 98 S. Ct. 1173, 1179-80.)

In the face of counsel's stated claim, the court held that the trial court erred in failing "either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel." (435 U.S. 475, 484, 55 L. Ed. 2d 426, 434, 98 S. Ct. 1173, 1178-79.) Under these circumstances, the court further held that reversal was "automatic" regardless of whether resulting prejudice was independently shown.

■■ In Illinois, to accomplish the same objective of assuring restraint free representation, a stricter rule has been applied, especially with respect to the establishment of the existence of a conflict of interests. In this State, also without the necessity of a showing of resulting prejudice, whenever a defense counsel's past or present commitments to others involve interests

which possibly conflict with those of the defendant, a *per se* rule of reversal will be invoked. (*People v. Stoval*, 40 Ill. 2d 109, 239 N.E.2d 441; *People v. Kester*, 66 Ill. 2d 162, 361 N.E.2d 569; *People v. Coslet*, 67 Ill. 2d 127, 364 N.E.2d 67; see also *People v. Meyers*, 46 Ill. 2d 149, 263 N.E.2d 81; *People v. Richardson*, 7 Ill. App. 3d 367, 287 N.E.2d 517; *People v. Cross*, 30 Ill. App. 3d 199, 331 N.E.2d 643; *People v. Brown*, 40 Ill. App. 3d 562, 352 N.E.2d 15; *People v. Wyatt*, 47 Ill. App. 3d 582, 362 N.E.2d 122; *People v. Grigsby*, 47 Ill. App. 3d 812, 365 N.E.2d 481; *People v. Drysdale*, 51 Ill. App. 3d 667, 366 N.E.2d 394.) That a criminal defendant need only establish from the record the possibility of a conflict of interests on the part of his attorney, applies equally where the attorney's "commitments" stem from his multiple representation of co-defendants, such as where the record shows some inconsistent interests or divergent positions among the attorney's clients, from which a possibility of restraint by defense counsel in representing the defendant, may be inferred. (*People v. Frey*, 50 Ill. App. 3d 437, 365 N.E.2d 283; *People v. Meng*, 54 Ill. App. 3d 357, 369 N.E.2d 549; *People v. Spicer*, 61 Ill. App. 3d 748, 378 N.E.2d 169; see also *People v. Ware*, 39 Ill. 2d 66, 233 N.E.2d 421; *People v. Johnson*, 46 Ill. 2d 266, 265 N.E.2d 869; *People v. Augustus*, 36 Ill. App. 3d 75, 343 N.E.2d 272; *People v. Halluin*, 36 Ill. App. 3d 556, 344 N.E.2d 579; but see *People v. Precup*, 50 Ill. App. 3d 23, 365 N.E.2d 1007, *appeal allowed*, 66 Ill. 2d 641; *People v. Reed*, 51 Ill. App. 3d 479, 366 N.E.2d 1137.) Where the circumstances raise the possibility of restraint, the application of a *per se* rule has been felt to be warranted in recognition of the fact that in most cases it is nearly impossible for a court to discern, or for a defendant to prove, or for defense counsel to disprove, either the existence of subtle restraint in the counsel's representation or its consequent prejudicial impact. (*People v. Stoval; People v. Kester; People v. Frey*.) The United States Supreme Court expressed a similar rationale in *Holloway* in presuming prejudice under the circumstances therein:

> "[A] rule requiring a defendant to show that a conflict of interests * * * prejudiced him in some specific fashion would not be susceptible to intelligent, evenhanded application. * * * [I]n a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process. It may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client. And to assess the impact of a conflict of interests on the attorney's options, tactics and decisions

in plea negotiations would be virtually impossible." (435 U.S. 475, 490-91, 55 L. Ed. 2d 426, 438, 98 S. Ct. 1173, 1182.)

The task is no less difficult in attempting to assess the existence of restraint in defense counsel's exercise of his judgment, discretion, and in his use of defense tactics, where his commitments to others reasonably call into question his motivation for taking an act or failing to act in some defense matter. That an inquiry must be made into counsel's motivation is itself a circumstance that ought never to be required. (*People v. Meyers*, 46 Ill. 2d 149, 152, 263 N.E.2d 81, 83.) As stated by the court in *People v. Kester*, 66 Ill. 2d 162, 168, 361 N.E.2d 569, 572:

> "The untenable situation which results for both the accused and his court-appointed attorney in such instances is one which can and should be avoided in the interests of the sound administration of criminal justice."

In the instant case, we first note that defendant and Lofton were represented at trial by separate public defenders, Sturgeon and Hoffman, respectively. This, however, does not mean that they were represented by independent counsel. It was Hoffman, in his capacity as public defender, who was appointed by the court to represent defendant and Lofton, as well as Washington, and it was he who continued to bear the responsibility of acting as their attorney although empowered to assign assistants for a proper discharge of his duties. (*People v. Spicer*, 61 Ill. App. 3d 748, 378 N.E.2d 169.) We cannot divorce Sturgeon's representation on behalf of defendant from his affiliation with, and obligation to, the office of the public defender, nor can we accurately gauge the subtle restraint arising from any tension in the professional relationship between Sturgeon and Hoffman, due to the claimed conflict. Accordingly, in considering the claimed conflict, we must take the view as if but a single attorney represented both defendant and Lofton. *People v. Spicer; People v. Meng*, 54 Ill. App. 3d 357, 369 N.E.2d 549; *People v. Freeman*, 55 Ill. App. 3d 1000, 371 N.E.2d 863; *People v. Stoval*, 40 Ill. 2d 109, 239 N.E.2d 441.

Defendant's claim of a conflict of interests is based on the inconsistent defenses of himself and Lofton. However, prior to filing his post-trial motion, the only objection raised to the continued representation by the office of the public defender was based on the bargain struck between Washington and the State for his testimony in return for a dismissal of the charges against him[1]. Nonetheless, in repeated motions to sever, the probability of inconsistent defenses was

---

[1] Defendant does not here raise and we thus need not consider the issue of whether the public defender's continued representation of defendant, after having negotiated this agreement on behalf of Washington, itself constituted a conflict of interests despite the failure of Washington to subsequently testify at defendant's trial. See *People v. Frey*, 50 Ill. App. 3d 437, 365 N.E.2d 283; *People v. Johnson*, 46 Ill. 2d 266, 265 N.E.2d 869.

brought to the attention of the trial court. Without regard to whether such apprehensions of defense counsel were sufficient to support a severance, the declarations of counsel that each of the clients would attempt to blame the other while absolving himself, were clearly sufficient to bring home to the court the existence of a potential conflict of interests and now warrants reversal. (*People v. Meng*, 54 Ill. App. 3d 357, 364, 369 N.E.2d 549, 553; *Holloway v. Arkansas*.) While a defense attorney bears the primary responsibility to carefully investigate and disclose any conflict of interests (Illinois Code of Professional Responsibility, Canon 5 (rev. 1977); ABA Standards for the Administration of Criminal Justice, Defense Function §3.5 (1971)), the trial court also bears an affirmative duty to be sensitive, and responsive, to possibilities of any such conflict (*People v. Grigsby*, 47 Ill. App. 3d 812, 365 N.E.2d 481). The trial court's duty becomes all the more acute where, as here, defense counsel is required to represent a defendant by court appointment. *Cf. People v. Craig*, 47 Ill. App. 3d 242, 361 N.E.2d 736.

The State urges that the mere declaration by defense counsel, prior to trial, of the nature of the possible conflict, without any supporting evidence, is insufficient to require a court to appoint other counsel. To so hold would have the incongruous result of requiring a defendant to prove an actual conflict, if the issue is raised promptly, but of placing a lesser burden on him, of showing only a potential for a conflict, if the issue is raised on appeal. It could also be argued that unsupported declarations of counsel could be made only for the purpose of delaying or disrupting trial or could be made collusively in an effort to obtain a reversal in the event of a conviction. As stated by our supreme court in *People v. Coslet*, 67 Ill. 2d 127, 136, 364 N.E.2d 67, 71:

> "This is a risk that this court is prepared to take, however, in order to assure that every person is assured of the right to effective assistance of counsel at his trial."

In the instant case, during the course of trial it, in fact, became abundantly clear that defense counsel's stated risk of a conflict was by no means too remote. The State's witness Beulah Hodges testified that only two men entered the store and she identified Lofton as one of them. Further, she stated that she saw Lofton go to the checkout counter, she then heard a gun shot, and she saw Lofton return to the meat counter with a gun in his hand. Conversely, Stanley Hodges identified only defendant and Washington but not Lofton, although he stated that three men entered the store.

The state of this evidence placed the interests of defendant and Lofton squarely in conflict by opening a plausible defense for each that would be inconsistent with the other. Relying on the testimony of Beulah Hodges, defendant could assert that the crimes were committed by Lofton, while

Lofton could raise a contrary defense relying on the testimony of Stanley Hodges. Since, by court appointment, defense counsel had a duty to represent the best interests of defendant, they may have been required to attempt to shift the blame to Lofton. However, they were duty bound to equally represent the best interests of Lofton, thus ethically foreclosing this possible defense. In short, they could not fulfill their duty to one client without violating their duty to another. Certainly other independent counsel representing defendant would have been free to choose such a defense without feeling barred by any ethical restraint. Faced with this dilemma, Hoffman and Sturgeon in fact adopted the erroneous attitude that each was defending only one client. They further attempted to deceive the jury with an appearance of the separateness of the two attorneys. They each then argued that the other's client committed the crime while attempting to save their own. As aptly put by the State in its closing argument before the jury:

"You've got two robbers that are caught in front of you today. And how are they going to get off, they're going to blame each other."

The attempt by the public defender to "sell off" the best interests of defendant, in an effort to protect Lofton, although understandable in light of the constraint placed upon him, was itself a denial of defendant's right to effective assistance of counsel. *People v. Meng,* 54 Ill. App. 3d 357, 365, 369 N.E.2d 549, 554.

■■ In denying defendant's post-trial motion the trial court found merit in the claimed conflict of interests but further found no prejudice resulted thereby. Prejudice, however, need not have been shown. Accordingly, we find that the lower court erred in failing to appoint independent counsel to represent defendant.

In addition to the foregoing error, we also find error in the State's failure to produce certain requested material. This consists of police reports, ballistics tests, and a statement by Amos Williams. Essentially this information shows that prior to the instant crimes, Williams loaned co-defendant Lofton a gun. After learning of Lofton's arrest for the instant crimes, Williams went to Lofton's home where he retrieved the gun from under Lofton's bed. Subsequently, Williams turned the gun over to the police. Tests conducted on the gun showed that it fired the bullet that entered Stanley Hodges' head.

■■ Although this material was requested in defendant's discovery motion and the State was aware of the information prior to trial, it was not disclosed to defendant until the close of trial, during jury deliberations. The requested information was clearly evidence favorable to defendant, particularly in light of his defense theory that Lofton and Washington committed the armed robbery and that Lofton, not he, had shot Stanley Hodges. Consequently, in withholding the information, the State

committed reversible error. *People v. Nichols*, 63 Ill. 2d 443, 349 N.E.2d 40; *People v. Wisniewski*, 8 Ill. App. 3d 768, 290 N.E.2d 414.

In light of our holding we need not consider other contentions raised by defendant. For the foregoing reasons, we reverse the judgment entered by the circuit court of St. Clair County against defendant, and we remand this cause for a new trial at which defendant is to be represented by counsel other than the office of the public defender.

Reversed and remanded with directions.

McCALLISTER, J., concurs.

Mr. JUSTICE KARNS, concurring:

I concur in the result reached by the majority, but not for the principle reason stated. My views on *"per se"* conflict of interest have been stated in *People v. Meng*, 54 Ill. App. 3d 357, 369 N.E.2d 549 (5th Dist. 1977), and *People v. Spicer*, 61 Ill. App. 3d 748, 378 N.E.2d 169 (5th Dist. 1978), and need not be repeated.

Nor do I find any actual demonstrated conflict of interest that resulted in Baxtrom receiving ineffective assistance of counsel condemned in *Glasser v. United States*, 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457 (1942), and more recently in *Holloway v. Arkansas*, 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173 (1978).

I believe it was an abuse of discretion to deny a severance to defendant and Lofton where their defenses were obviously inconsistent in that they accused each other of being the perpetrator of the crime. The arguments advanced by the majority to demonstrate a conflict of interest seem to me to demonstrate prejudice in the denial of a severance.

I agree with the majority that the failure to furnish ballistic reports was a violation of *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), *People v. Nichols*, 63 Ill. 2d 443, 349 N.E.2d 40 (1976), and *People v. Flowers*, 51 Ill. 2d 25, 281 N.E.2d 299 (1972). Perhaps a more egregious violation was the failure to produce a police report which contained the name of a subject who had been questioned in connection with the crime and told a somewhat implausible story. This material, known to the perpetrator, was never revealed to defendant.