THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HOWARD GRIGSBY, Defendant-Appellant.

First District (3rd Division)   Nos. 61978, 76-678 cons.

Opinion filed April 13, 1977.

814

Ackerman, Durkin & Egan, of Chicago (Allan A. Ackerman, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Myra J. Brown, and Salvatore R. Mazullo, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:
Howard Grigsby was indicted for aggravated battery and attempt murder. The indictment named James Mitchell as the victim. A person identifying himself as James Mitchell appeared before the grand jury which returned the indictment, and testified that defendant had shot him.

The defendant was represented by the law firm of Ackerman, Durkin & Egan; the preparation of the case and the pretrial court appearances were the responsibility of Mr. Egan. Mr. Ackerman, another member of the firm, had minimal responsibility for this case until the day set for trial, when, because Mr. Egan was occupied with another trial, Mr. Ackerman appeared on behalf of the defendant.

During the proceedings on the day this case was called for trial, it became apparent that the victim of the shooting was Jewell Mitchell ("Jewell") and not James Mitchell, and that Jewell was James' brother.

Jewell testified at trial that he appeared before the grand jury and was told by either a prosecutor or a law enforcement official to use the name James Mitchell while testifying before the grand jury. The record contains no explanation of the motive for this deception. Before trial commenced, the prosecution amended the indictment to substitute Jewell's name for his brother's.

After discovering that Jewell was the complaining witness, Mr. Ackerman promptly advised the court of a conflict of interest arising from his representation of Jewell in another criminal matter, requested leave to withdraw as counsel for the defendant, and moved for a continuance so that the defendant could get new counsel. In advising the court of his relationship with Jewell, Mr. Ackerman was acting in conformity with ABA Standard 3.5(a) relating to the defense function, which provides that "[a]t the earliest feasible opportunity defense counsel should disclose to the defendant any interest in or connection with the case or any other matter that might be relevant to the defendant's selection of a lawyer to represent him."

The trial judge indicated that Mr. Ackerman's claim he had a conflict of interest would not be a basis for a continuance because Mr. Egan, Mr. Ackerman's partner, who had not been in contact with Jewell, could represent the defendant at the trial. The defendant himself addressed the court, stating, "I would like to get a continuance." The judge responded, "Denied—not after a year you're not going to get a continuance." The judge then directed Mr. Ackerman to have Mr. Egan present at 1 p.m. that afternoon; at that time a hearing was held in the judge's chambers at which Jewell testified. The judge stated that he was "anxious to ascertain whether or not, in fact, there is a conflict of interest," and that Jewell had been sworn and he was to be asked "some questions for the sole purpose of finding out whether, in fact, there is a conflict of interest." Before proceeding with the interrogation of Jewell, the judge announced, "I'm not certain whether Mr. Grigsby did request a substitution of counsel, or not, but if he has I would not permit it at this late hour."

Defendant was not present for any part of the proceeding in chambers in which Jewell testified. Jewell's testimony was that approximately 5 weeks prior to the trial date in this case he conferred with Mr. Ackerman. The subject of their conference was the possibility of Mr. Ackerman representing him in another criminal matter. Jewell explained his case to Mr. Ackerman, who said he wanted to think about it. Approximately 2 weeks later, Jewell called Mr. Ackerman and had a second discussion with him regarding his criminal matter. Within the week prior to his testimony in this case, Jewell again spoke to Mr. Ackerman. In the last conversation Jewell told Mr. Ackerman he was in the witnesses' quarters at the county jail because he had been shot 4 years earlier, the case was

about to come to trial and he was going to be a witness. Jewell testified that immediately before Mr. Ackerman raised the question of conflict of interest in this case, he expected Mr. Ackerman to be doing something on his behalf within a week or 10 days, and that Mr. Ackerman was willing to represent him. However, in view of the possible conflict of interest, Jewell did not know whether the court would permit Mr. Ackerman to represent him. Finally, Jewell testified that no arrangements had been made for the payment of a fee to Mr. Ackerman.

After Jewell finished testifying, the trial judge concluded that Jewell had no attorney-client relationship with Mr. Ackerman, and that any disclosures Jewell made to him were not privileged. Seeing no conflict of interest in Mr. Ackerman's position, the judge refused to let him withdraw and directed that the trial proceed. The trial judge did not ask the defendant his views about his continued representation by his attorneys.

The defendant was tried without a jury, and found guilty as charged. The defendant is entitled to a new trial because of errors which occurred just prior to the start of his trial.

First, the hearing in chambers to determine whether defendant's attorneys had a conflict of interest was a critical stage of the proceedings for the defendant. He needed to hear Jewell's account of his relationship with Mr. Ackerman to decide intelligently whether he wished Mr. Ackerman's firm to continue representing him. We subscribe to the procedure which *United States v. Alberti* (2d Cir. 1972), 470 F.2d 878, 882, *cert. denied*, 411 U.S. 919, 36 L. Ed. 2d 311, 93 S. Ct. 1557, suggests a trial judge follow when a conflict of interest involving an attorney's representation of both a witness and the defendant develops at trial. The court there recommended:

> "[T]he trial judge should see that the defendant is fully advised of the facts underlying the potential conflict and is given an opportunity to express his or her views." 470 F.2d 878, 882.

■■■ The 1970 Illinois Constitution, article I, section 8, as well as the sixth amendment to the United States Constitution, guarantee an accused the right to appear and defend "in person and by counsel" and "to meet the witnesses face to face." This constitutional guarantee is not violated by hearings held outside defendant's presence in which substantial rights of the accused are not considered. (*People v. Woods* (1963), 27 Ill. 2d 393, 395, 189 N.E.2d 293.) But, a defendant's right to be present must be protected whenever it has a reasonably substantial relation to the paramount consideration of his opportunity to defend himself. (*Snyder v. Massachusetts* (1934), 291 U.S. 97, 78 L. Ed. 674, 54 S. Ct. 330.)) In this case, Mr. Ackerman's possible conflict of interest which might interfere with his undivided allegiance to, and effective representation of, the defendant was clearly relevant to the adequacy of the defendant's opportunity to protect himself. Therefore, the defendant should have

been present while sworn testimony on that subject was heard and considered by the court. Jewell's testimony in the judge's chambers was vital to defendant's own decision concerning his satisfaction with his counsel, an expression which the trial judge should have solicited.

■■ The record affirmatively shows that the defendant was not present during the interrogation of Jewell in the judge's chambers. It also discloses that the defendant was in the courtroom immediately prior to the adjournment into chambers, but does not explain why he was not included in that hearing. Under these circumstances, and because the law raises every reasonable presumption against waiver of fundamental constitutional rights, the defendant did not waive his right to be present at the hearing at which Jewell testified about his negotiations with Mr. Ackerman. *People v. Stoval* (1968), 40 Ill. 2d 109, 114, 239 N.E.2d 441.

■■ Second, an attorney owes his client undivided allegiance, and this is particularly true of an attorney representing a person accused of a crime. Where an attorney's loyalty to a defendant in a criminal case is diluted by that attorney's obligation to others, the defendant's sixth amendment right to effective assistance of counsel is not satisfied. (*United States v. Jeffers* (7th Cir. 1975), 520 F.2d 1256, *cert. denied*, 423 U.S. 1066, 46 L. Ed. 2d 656, 96 S. Ct. 805; *Castillo v. Estelle* (5th Cir. 1974), 504 F.2d 1243; *Porter v. United States* (5th Cir. 1962), 298 F.2d 461; *United States v. LaVallee* (E.D.N.Y. 1968), 282 F. Supp. 968; *United States v. Myers* (E.D. Pa. 1966), 253 F. Supp. 55, 57; *People v. Kester* (1977), 66 Ill. 2d 162, 361 N.E.2d 569.) Many jurisdictions, including Illinois, apply the rule that in a criminal case, a defense attorney with a possible conflict of interest arising from his commitment to another person should not participate in the defense even though no actual prejudice to the defendant as a result of the conflict is or can be shown. *Castillo*, at 1245; *United States v. LaVallee*, at 973; *United States v. Myers*, at 57; *Kester; Stoval*, at 113; *People v. Fuller* (1974), 21 Ill. App. 3d 437, 441, 315 N.E.2d 687.

■■■ The trial judge concluded that no attorney-client relationship had been established between Jewell and Mr. Ackerman's firm because Jewell had not agreed to pay the law firm a fee and the law firm had done no work for him. For some other purpose—a claim of malpractice, for example—a court might require communications or transactions in addition to those which took place here, before recognizing an attorney-client relationship. But to determine whether Mr. Ackerman had a conflict of interest, the court was not required to look to the technicalities of the law of offer and acceptance for guidance. Jewell testified that in his conversation with Mr. Ackerman a week earlier, he and his wife were willing to let Mr. Ackerman represent him; that Mr. Ackerman was willing; and that before the question of Mr. Ackerman's conflict of interest arose, Jewell expected Mr. Ackerman to do something for him in a week or 10 days. This was enough to create a potential conflict of interest for

Mr. Ackerman's firm in their representation of defendant in this case. The controlling consideration in determining whether the effectiveness of an attorney's assistance to a criminal defendant is impaired by his relationship with others is defined in *People v. Kester*. The significant inquiry is not whether the attorney concurrently represents two clients with inconsistent positions, but whether a potential conflict of interest exists.

■■ A defendant's reluctance to be represented by an attorney who consulted with the complaining witness as a prospective client on three occasions in the prior 5 weeks, and who was willing to act on behalf of the complaining witness, is understandable. Canon 9 of the Illinois Code of Professional Responsibility, adopted by the Board of Governors of the Illinois State Bar Association and the Board of Managers of the Chicago Bar Association, instructs members of the bar to avoid even the appearance of professional impropriety. Mr. Ackerman's concurrent relationships with the defendant and the complaining witness left the appearance of impropriety, and his reluctance to proceed with Grigsby's defense is also understandable. The response of our supreme court in *Kester* to the possibility of an appearance of dual loyalties on the part of an attorney is particularly relevant to the posture of both the defendant and his attorney in the case before us. The court observed that the accused might later suspect that his attorney had not acted properly, the attorney finds himself in the difficult and unfortunate position of being subject to unfounded charges of unfaithful representation, and both the accused and his attorney are placed in an untenable situation which can and should be avoided in the interests of the sound administration of justice.

In *United States v. Myers* (E.D. Pa. 1966), 253 F. Supp. 55, the court said the accused should be given the opportunity to decide whether he wants his attorney to continue to represent him when a conflict of interest arises. We believe that is the least that should have been done to dispel the appearance of impropriety. The circuit court erred in not affording the defendant that choice.

Apart from any attorney-client relationship between Mr. Ackerman and Jewell, an attorney-client privilege existed. This privilege was explained and defined in *People v. Adam* (1972), 51 Ill. 2d 46, 48, 280 N.E.2d 205, *cert. denied*, 409 U.S. 948, 34 L. Ed. 2d 218, 93 S. Ct. 289:

> "The attorney-client privilege exists in order that one who is, or seeks to become a client, may consult freely with counsel without fear of compelled disclosure of information communicated by him to the attorney whom he has employed, or seeks to employ. The essentials of its creation and continued existence have been defined as follows: '(1) Where legal advice of any kind is sought (2) from a

professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.' 8 Wigmore, Evidence, sec. 2292 (McNaughton Rev. 1961)."

Mr. Ackerman represented to the court that the disclosures Jewell made to him while they were discussing the possibility of Mr. Ackerman's employment were confidential and, therefore, privileged. Jewell testified in the proceeding in chambers that he had explained his understanding of his case to Mr. Ackerman, and told him what happened. He also testified that in their last conversation he informed Mr. Ackerman about new matters which had come up and of substantial proof he had developed regarding the circumstances of his incarceration. Mr. Ackerman never revealed the content of the communications he received from Jewell because he regarded them as privileged, and the trial judge stated he was not interested in their content. It appears clear in view of Mr. Ackerman's representation to the court and Jewell's characterization of the subject matter that their conversations included privileged communications.

Unlike Mr. Ackerman, who was not free to use the privileged information, another attorney ingenious enough to ferret out the same information independent of Jewell would have been free to use it. Also, Mr. Ackerman might have been restricted unnecessarily in his cross-examination of Jewell because of his concern about divulging privileged matter. In *United States. v. LaVallee* (E.D.N.Y. 1968), 282 F. Supp. 968, 971, for example, the court observed that a danger "in being represented by an attorney who is also representing a prosecution witness is that the scope of examination of the witness by the attorney might be restricted by the fact that the attorney has learned confidential information about his client-witness which cannot be revealed." In *United States v. Jeffers* (7th Cir. 1975), 520 F.2d 1256, 1265, the court noted the danger that "counsel may overcompensate and fail to cross-examine fully for fear of misusing his confidential information," and fail "to inquire into legitimate areas of concern."[1] In *Kester*, the court recognized "the possibility that the attorney might be subject to subtle influences which could be viewed as adversely affecting his ability to defend his client in an independent and vigorous manner." 66 Ill. 2d 162, 167.

---

[1] In *United States v. Jeffers*, the court suggested at page 1265 that outlining the confidential information to the trial judge, perhaps *in camera*, might obviate this difficulty. Apparently, such a disclosure would be made to obtain a ruling on whether the privilege was applicable or had been waived, or whether the information was usable. We believe this suggestion is unsatisfactory, however, since revealing confidential information—even to a judge—destroys its privilege. And, if this disclosure reveals criminal conduct by the witness, would not the judge be obligated to report that to the proper authorities?

In this case, questions arose concerning whether the prosecutors had promised Jewell assistance in connection with the criminal charges against him, and whether such an inducement influenced Jewell's testimony here. Only Mr. Ackerman and Jewell knew whether they had discussed any prosecutorial overtures which might have helped impeach Jewell's testimony. So long as Mr. Ackerman took the position that his conversations with Jewell were privileged and he continued as defendant's attorney, defendant could have little hope of learning whether any such prosecutorial overtures occurred. Because Mr. Ackerman may have been hindered by his attorney-client privilege from exploring fully any inducements which Jewell received, the defendant should have been given the option of seeking a new attorney.

■■ If the trial judge concluded that the law firm of which Mr. Ackerman was a member should not be permitted to withdraw because either Mr. Egan or Mr. Durkin, who had no contact with Jewell, could have represented the defendant, the court's reasoning was erroneous. The knowledge of one member of a firm is imputed to all of its members, and the disqualification of one partner from a case disqualifies his copartners. *Kramer v. Scientific Control Corp.* (1976), 534 F.2d 1085, 1091-1092; *Barliant v. Houghton Mifflin Co.* (1977), 45 Ill. App. 3d 494, 359 N.E.2d 886; ABA Code of Professional Responsibility, Canon 5, DR 5—105(D).

■■ Finally, the defendant's request for a continuance should have been granted. Jewell told the grand jury his name was James Mitchell. The indictment charged the defendant with the attempted murder of James Mitchell. Indeed, a James Mitchell existed. Not granting a continuance interfered with a full opportunity for defendant to investigate Jewell's history and background, plus his current difficulties with law-enforcement authorities. In addition, Mr. Ackerman was not alerted to Jewell's role in this case until the trial was about to commence. Under these circumstances, denying the defendant's request for a continuance was an abuse of judicial discretion.

Industrious trial court judges, beset with backlogs and public demand for speedy justice, do their best to try cases quickly, as well as fairly. In this case, where defendant had answered ready for many weeks, the judge's desire to get on with the trial is understandable. Yet, speed cannot be permitted to imperil effective assistance of counsel. Though justice and speed are not mutually exclusive, if a judge must choose between the two, he must pick the side of justice. See *People v. Lott,* 66 Ill. 2d 290, 362 N.E.2d 312; *People v. Shrum* (1957), 12 Ill. 2d 261, 265, 146 N.E.2d 12.

In the interest of scrupulous regard for the sixth amendment to the United States Constitution, article I, section 8, of the Illinois Constitution,

and the Canons of Professional Responsibility, it is necessary that the defendant be given a new trial.

Reversed and remanded for a new trial.

JIGANTI and McGILLICUDDY, JJ., concur.