THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES MENG, Defendant-Appellant.

Fifth District    No. 76-106

Opinion filed October 21, 1977.—Rehearing denied November 16, 1977.

KARNS, J., dissenting.

Randolph E. Schum, of Belleville, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

Defendant, James Meng, brings this appeal from the judgment entered by the circuit court of St. Clair County on a jury verdict finding him and a co-defendant, Bill Aitken, guilty of the burglary of the residence of Eleanor Smoot.

Defendant and Aitken had been jointly indicted and tried for the

offense and were each represented at trial by a separate assistant public defender. Prior to the selection of the jury, the assistant public defender, John Maher, who was representing Aitken, moved to withdraw as counsel on the grounds that the assistant public defender, Roger Hay, who was representing defendant, was attempting to negotiate with the prosecution and had offered to have defendant testify on behalf of the State. The prosecution informed the trial court that the offer had been refused and, on this basis, the court denied the motion to withdraw. Maher then moved for a severance asserting that the "stories" of the defendants conflicted and that Aitken intended to present a defense of intoxication. Hay joined in the motion, on behalf of defendant, and informed the court of a police report showing a statement by Aitken to the effect that defendant had, alone, committed the burglary but that if defendant were to testify at trial, "he puts most of the blame on Mr. Aitken." The trial court denied the motion. Neither defendant nor Aitken were present during the foregoing conference.

At trial the evidence showed that defendant and Aitken were friends of James Smoot, who had resided with his mother but had died in a hospital the day before the burglary. A neighbor testified that on the night in question she saw two boys walking down the Smoot driveway toward the residence and she called the police. Police officer Chambers testified that in response to a radio dispatch he went to the Smoot residence. He walked up the driveway toward the rear of the house and saw two individuals standing on the rear porch near a partially open door. the individuals were facing each other and one of them appeared to be holding the door open. Chambers saw a "white object" go between the two individuals but he could not tell who had thrown it. It was later identified as a jewelry box and its contents were described as essentially worthless trinket jewelry. Keys, originally found but left in defendant's pocket and again later found in a patrol car, were identified as fitting Smoot's door locks. After the arrest of defendant, Officer Chambers investigated the house and found that a chest of drawers in a bedroom had been ransacked.

Aitken testified in his own behalf that on the day in question he had consumed an extensive quantity of alcohol and that he was at a friend's house when defendant approached him and invited him to come along and collect a debt that James Smoot owed. Aitken stated that he had not known of Smoot's death. He further testified that he borrowed a van and he drove defendant to the scene and stopped to let defendant out in front of Smoot's home and that he then proceeded to park the vehicle about three houses away. Aitken stated that when he next saw defendant, the police arrived, and, at that time, he was walking toward the house and he could see defendant standing on the back porch, knocking on the door.

He denied seeing or throwing a white box, denied going to the house with the intent of committing a burglary and he denied having committed the burglary.

Defendant did not testify.

In rebuttal, police officer Mayhan testified about Aitken's statement to the police. On cross-examination of Mayhan by Aitken's attorney, an attempt was made to elicit the full statement. In chambers, the attorney for defendant objected to the portion of the statement in which, after Aitken stated that he approached the rear of the house, he stated: "At this time, Meng came running out of the back door of Jim Smoot's house and said the cops are here." Counsel for Aitken argued that without the sentence, the statement would make it appear that the burglary was a joint criminal venture. The objection, however, was sustained by the court and the statement was read to the jury without the objected to sentence.

Of the issues raised by defendant for review, we find the dispositive question to be whether defendant was denied the effective assistance of counsel because of a potential conflict of interest on the part of defendant's court-appointed counsel. Defendant contends that such a conflict arose due to the "antagonism" between his defense and that of Aitken[1].

■■ Initially we note that it was the public defender who was appointed to represent both defendant and Aitken. In *People v. Benford,* 31 Ill. App. 3d 892, 895, 335 N.E.2d 106, 109, the court stated:

> "When the public defender of a county is appointed for an indigent in a criminal case, it is the office of the defender that is appointed. [Citation.] In legal contemplation, then, it is the public defender who is in court after he is appointed, although he may appear there through appointed assistants."

In the instant case, defendant and Aitken were each represented at trial by a separate assistant public defender, however, as such, the attorneys were not independent of one another.

■■ The fundamental right to the effective assistance of counsel requires that the person represented shall receive the undivided loyalty of counsel. (*Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457.) In Illinois, where a defense counsel's past or present commitments to others involves interests which potentially conflict with those of the defendant, a *per se* rule of reversal has been applied without the necessity of a showing of any actual prejudice resulting thereby.

---

[1] On appeal to this court (*People v. Aitken,* No. 76-105, filed Aug. 3, 1977) co-defendant Aitken failed to raise the issue of possible conflicts of interest and his conviction was affirmed by order pursuant to Supreme Court Rule 23 (Ill. Rev. Stat. 1975, ch. 110A, par. 23).

*People v. Stoval,* 40 Ill. 2d 109, 239 N.E.2d 441; *People v. Kester,* 66 Ill. 2d 162, 361 N.E.2d 569; *People v. Coslet,* 67 Ill. 2d 127, 364 N.E.2d 67.

In *Stoval* the defendant was convicted of burglary and theft where the victim of the crime was a client of the court-appointed defense counsel's law firm. The court found that the relationship between the attorney and victim might make the attorney unwilling to effectively represent the defendant. In reversing the judgment and remanding for a new trial, the court stated:

> "There is no showing that the attorney did not conduct the defense of the accused with diligence and resoluteness, but we believe that sound policy disfavors the representation of an accused, especially when counsel is appointed, by an attorney with possible conflict of interests. It is unfair to the accused, for who can determine whether his representation was affected, at least, subliminally, by the conflict. Too, it places an additional burden on counsel, however conscientious, and exposes him unnecessarily to later charges that his representation was not completely faithful. In a case involving such a conflict there is no necessity for the defendant to show actual prejudice." 40 Ill. 2d 109, 113, 239 N.E.2d 441, 444.

In *Kester,* the court reversed the judgment of conviction and remanded the cause where the defendant's court-appointed counsel had previously appeared as an assistant State's Attorney in the same proceedings in which he later assumed the duties of defense counsel. The court found that the attorney's prior involvement in the cause, without regard to the actual nature of that involvement, raised a potential conflict of interest. The court noted that while the attorney's former association with the prosecution could possible inure to the defendant's benefit, the overriding consideration was the possibility that because of the prior personal involvement in the case, the attorney may have been subliminally reluctant to attack any of the actions or decisions of the prosecution of which he had been personally involved with or responsible for.

In *Coslet,* the court-appointed counsel represented the defendant charged with the murder of her husband. During the course of trial, the same attorney was retained by the administrator of her husband's estate. The court noted that the scope of the attorney's subsequent employment involved a duty to collect all the assets of the estate he could muster. Since a conviction of the defendant raised the possibility that the estate could be enriched, the court found that the attorney had conflicting obligations. Consequently, the court reversed the judgment and remanded the cause.

In *Stoval, Kester* and *Coslet* the court only required a showing of the existence of a potential conflict of interest stemming from the defense counsel's past or present commitments to others, which conflict raised the

possible unwillingness or inability (as in *Coslet* due to conflicting obligations) of the defense counsel to effectively represent the interests of the defendant. (*People v. Halluin,* 36 Ill. App. 3d 556, 344 N.E.2d 579; *People v. Drysdale,* 51 Ill. App. 3d 667, 366 N.E.2d 394; see also *People v. Richardson,* 7 Ill. App. 3d 367, 287 N.E.2d 517; *People v. Brown,* 40 Ill. App. 3d 562, 352 N.E.2d 15; *People v. Wyatt,* 47 Ill. App. 3d 582, 362 N.E.2d 122.) As the court stated in *People v. Meyers,* 46 Ill. 2d 149, 152, 263 N.E.2d 81, 83, in commenting on *Stoval:*

> "In that case, it was at least a matter of some conjecture as to whether the attorney's loyalty would be divided simply by a subconscious deference to the presumed desires of the victim, a fee-paying client."

But by applying a *per se* conflict of interest rule, due recognition is given to the fact that it is almost impossible for a court to discern or for a defendant to prove the subtle effect which a conflict of interest may have had on a defense counsel's representation. (*People v. Frey,* 50 Ill. App. 3d 437, 365 N.E.2d 283; but see *United States v. Jeffers,* 520 F.2d 1256 (7th Cir. 1975), *cert. denied,* 423 U.S. 1066, 46 L. Ed. 2d 656, 96 S. Ct. 805.) Once a potential conflict is shown to exist, a reversal is felt warranted without the necessity of any showing of prejudice resulting thereby. As stated in *Glasser v. United States,* and adopted by the court in *Stoval:*

> "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." 315 U.S. 60, 76, 86 L. Ed. 680, 702, 62 S. Ct. 457, 467.

By applying a *per se* conflict of interest rule upon the mere showing of a potential conflict and reversing such cases without the necessity of any showing of resulting prejudice, not only are actual professional improprieties avoided but even the appearances of impropriety are barred in an effective manner. As the court stated in *Kester,* where a potential conflict of interest is shown to exist:

> "The untenable situation which results for both the accused and his court-appointed attorney in such instances is one which can and should be avoided in the interests of the sound administration of criminal justice." 66 Ill. 2d 162, 168, 361 N.E.2d 569, 572.

Where a single attorney represents two or more defendants on related charges, this fact, alone, is insufficient to raise the possibility of a conflict of interest. (*People v. Durley,* 53 Ill. 2d 156, 290 N.E.2d 244.) While the "commitment to others" is obvious, something more must be shown by that commitment, consistent with *Stoval, Kester* and *Coslet,* establishing the existence of a potential conflict of interest in order to invoke the application of the *per se* rule.

In *People v. Ware,* 39 Ill. 2d 66, 233 N.E.2d 421, an attorney represented

the defendant and a co-defendant and the co-defendant pleaded guilty and, prior to his sentencing, he testified against the defendant on behalf of the State. The court reversed the conviction and remanded the cause holding that because of the attorney's responsibility to the co-defendant, he had "of necessity" to assume a position of ambivalence toward the defendant.

In *People v. Johnson,* 46 Ill. 2d 266, 265 N.E.2d 869, the court reversed the conviction of the defendant and remanded the cause for a new trial upon a finding that it could not be said that the defendant received the undivided allegiance of counsel. The holding was based on facts showing that charges against a co-defendant, represented by the same attorney, had been dismissed and subsequently the co-defendant testified against the defendant.

Under similar facts as *Johnson,* this court in *People v. Augustus,* 36 Ill. App. 3d 75, 343 N.E.2d 272, reversed the defendant's conviction and remanded for a new trial where the defense attorney also represented a co-defendant who, on the day of his arrest, had confessed implicating the defendant and subsequently had pleaded guilty, was sentenced and thereafter testified against the defendant. In holding that it could not be said that the defendant received the undivided allegiance of counsel, we noted that from the outset of the case the interests of the defendants had already begun to diverge, making it impossible for defense counsel to give full and equal weight to both of them.

Although in *Ware, Johnson* and *Augustus,* the co-defendant had in fact testified against the defendant, this court in *People v. Frey,* 50 Ill. App. 3d 437, 365 N.E.2d 283, found the fact that the co-defendant had never been required to testify against defendant, insufficient to distinguish this case from those cited. In *Frey,* the same attorney represented the defendant and a co-defendant on certain of the charges against them. Those charges against the co-defendant were dismissed by the State in return for his promise to testify against the defendant. Thereafter, defendant pleaded guilty. In reversing the defendant's convictions in which he was not also represented by independent counsel and remanding to permit defendant to plead anew to those charges, this court found that the attorney was in a potential conflict of interest situation since in evaluating and advising the defendant of the future course of the defendant's defense, he could not give full and equal weight to both his clients because of their divergent positions.

■■ It must be noted that in *People v. Dickens,* 19 Ill. App. 419, 311 N.E.2d 705, where there was dual representation of co-defendants by court-appointed counsel and neither defendant testified, this court held that there must be a "complete antagonism" of defenses showing an *actual* conflict of interests in order to support a reversal on the basis of

such a conflict. (See also *People v. Precup,* 50 Ill. App. 3d 23, 365 N.E.2d 1007.) However, under the *per se* rule enunciated in *Stoval, Kester* and *Coslet,* a defendant is only required to show the existence of a *potential* conflict of interest. Clearly where the record shows divergent positions by co-defendants represented by the same counsel, such positions may create the possibility of conflicting obligations for the attorney. That the possibility exists, is all that our supreme court has required to invoke the *per se* rule. Hence, to the extent that *Dickens* is inconsistent with *Stoval, Kester* and *Coslet,* we do not adhere to *Dickens.*

In the case at bar, defense counsel for defendant and Aitken moved for a severance on the grounds that the "stories" of defendant and Aitken "conflicted." Counsel for defendant explained to the trial court that a written statement by Aitken exculpated him while inculpating defendant but that if defendant were to testify he would accuse Aitken of being the instigator of the crime. Regardless of whether such apprehensions amounted to a sufficient showing so that the trial court's denial of a severance was an abuse of discretion (see *People v. Davis,* 43 Ill. App. 3d 603, 357 N.E.2d 96), a question we need not here decide, such information was sufficient to bring home to the court the existence of a possibility of a conflict of interest due to Aitken's statement inculpating defendant.

Because of the divergent positions of defendant and Aitken, the public defender first tried, in the interest of defendant, to negotiate a plea agreement with the State by offering the testimony of defendant on behalf of the State against Aitken. When this failed, it became necessary, in the interest of Aitken, in light of his written statement, to present a defense of Aitken by incriminating defendant to prove Aitken's professed innocence. As we stated in *People v. Augustus,* 36 Ill. App. 3d 75, 77, 343 N.E.2d 272, 273:

> "The public defender was required to perform a balancing act in which the interests of one and then the other of his clients came first since it was impossible for him to give full and equal weight to the interests of both."

In fact, at trial, Aitken but not defendant, testified. Although Aitken stated that he had only seen defendant "knocking on the door," he also stated that he had first dropped defendant off in front of Smoot's house and that he then proceeded to park the van. He further testified that the police arrived at the scene just as he, himself, approached the rear of the house. In light of the evidence that the door was open, a chest of drawers had been ransacked and jewelry had been taken, the inference was clear that defendant had alone entered the house. This inference was again raised during closing argument by Aitken's attorney. Indeed, the attorney attempted unsuccessfully to have that portion of Aitken's written statement directly inculpating defendant, read to the jury.

■■ This attempt to try to "sell off" defendant in order to save Aitken was, itself a betrayal of the best interests of defendant and a denial of his right to the effective assistance of counsel. *People v. Frey; People v. Augustus; cf. People v. Smith,* 19 Ill. App. 3d 138, 310 N.E.2d 818.

■■ The primary responsibility rests on defense counsel to take care not to accept or continue the representation of two or more co-defendants unless it is clear that there exists no potential conflicts of interest. (*People v. Grigsby,* 47 Ill. App. 3d 812, 365 N.E.2d 481; *People v. Craig,* 47 Ill. App. 3d 242, 361 N.E.2d 736.) Likewise where two or more defendants are represented by the same counsel, particularly when counsel is court-appointed, the trial court has a duty to be conscious of potential conflicts of interest and to see that each defendant is represented by independent counsel if such a potential exists. (*People v. Grigsby; People v. Craig.*) We note that in *Craig* the court found that no potential conflict of interest arose where none of the alibis of any of the defendants inculpated one another and where the testimony of one defendant, placing a co-defendant at the scene of the crime, was, in fact, confirmed by that co-defendant. (See also *People v. St. Pierre,* 25 Ill. App. 3d 644, 324 N.E.2d 226; *People v. Smith,* 19 Ill. App. 3d 138, 310 N.E.2d 818.) In the case at bar, however, unlike *Craig,* Aitken's statement, known by defense counsel and made known to the trial court prior to trial, inculpated defendant in the commission of the crime.

■■ The State argues that the defendant waived consideration of this issue since he failed to object to his representation by the public defender in the lower court. In *Glasser v. United States,* 315 U.S. 60, 70, 86 L. Ed. 680, 699, 62 S. Ct. 457, 463, the court stated:

> "To preserve the protection of the Bill of Rights for hard-pressed defendants, we indulge every reasonable presumption against the waiver of fundamental rights."

In the case at bar there is no evidence that defendant was affirmatively advised of the significance of the potential conflict nor that he had a full understanding of such conflicts of interest. (*People v. Stoval; People v. Kester.*) Under the circumstances, we find no knowing waiver.

For the foregoing reasons, we reverse the judgment of the circuit court of St. Clair County and remand for a new trial at which defendant is to be represented by counsel other than the public defender. In light of our holding, we need not consider the other additional matters which defendant urges were prejudicial and entitle him to a new trial.

Reversed and remanded.

CARTER, P. J., concurs.

Mr. JUSTICE KARNS, dissenting:

This decision will effectively prevent future representation of two or more defendants by individual counsel, or separate counsel from one office, such as a public defenders office as in the instant case, as some "potential conflict," between defendants, to use the expression in the majority opinion, may always be invented or conjured up through chimerical fancy prior to the trial of any criminal case.

The only point worthy of consideration by this court is whether defendant's motion for severance made on the day of trial should have been allowed. We have held that a defendant is prejudiced by a joint trial when a co-defendant's defense is clearly antagonistic to that of defendant or where evidence admissible against a co-defendant only is admitted against the defendant. (See *People v. Miner* 46 Ill. App. 3d 273, 360 N.E.2d 1141, and cases therein cited.) Defendant never demonstrated the nature of any prejudice prior to trial and in fact there was none. That defendant and Aitken may have blamed each other because they were caught in the act of burgling the Smoot home may be true, but this is not the kind of "antagonism" that necessitates separate trials. That Aitken might present a defense of intoxication would not suggest that Aitken's testimony would incriminate Meng. Meng mentioned Aitken's statement incriminating him but did not urge a severance on that grounds, and it was not suggested that the incriminating part of the statement would be introduced in evidence.

While the pretrial arguments of counsel may have suggested the spectre of antagonistic defenses, the defenses presented at trial were not antagonistic. Defendant's co-defendant, Aitken, did not present a defense of intoxication. In fact, Aitken's counsel did not represent to the court that this defense would necessarily be inconsistent or antagonistic. His testimony at trial exonerated both himself and defendant. Contrary to the majority opinion, there was no defense presented on behalf of Aitken that incriminated Meng.

While a potential *Bruton* problem was possible (*Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620), this was remedied by the removal of the offending sentence from the statement, and in fact Aitken did testify and was subject to cross-examination (*Nelson v. O'Neil*, 402 U.S. 622, 29 L. Ed. 2d 222, 91 S. Ct. 1723). While Aitken might complain that the deletion was harmful to his defense, this furnishes no basis for complaint by Meng.

The type of conflict of interest present in *People v. Stoval,* 40 Ill. 2d 109, 239 N.E.2d 441; *People v. Kester,* 66 Ill. 2d 162, 361 N.E.2d 569; and *People v. Coslet,* 67 Ill. 2d 127, 364 N.E.2d 67, is certainly not present here, as the discussion of those cases in the majority opinion

demonstrates. Those cases can truly be described as presenting a potential conflict of interest. This is not a conflict of interest situation. The only legitimate inquiry here is whether Meng received the effective assistance of counsel and whether a severance should have been granted. An examination of the record shows that, in fact, he received vigorous representation by court appointed counsel. Unfortunately for defendant, the evidence of his guilt was overwhelming, and no amount of supposition can change the fact that both defendants were apprehended at the back door of the Smoot home.

I have accepted the majority reasoning that because each defendant was represented by an assistant public defender, the case must be viewed as though both defendants were represented by single counsel, presumably the public defender. I know of no authority so holding, and in fact, the record clearly demonstrates that each defendant received the vigorous representation and undivided loyalty of his individual counsel. In any event, the majority observes, quite properly, that the fact that two or more defendants are represented by a single attorney is insufficient to "raise the possibility of a conflict of interest" (*People v. Durley*, 53 Ill. 2d 156, 290 N.E.2d 244).

*People v. Johnson*, 46 Ill. 2d 266, 265 N.E.2d 869, and *People v. Ware*, 39 Ill. 2d 66, 233 N.E.2d 421, are clearly distinguishable, and were distinguished in our opinion in *People v. Dickens*, 19 Ill. App. 3d 419, 311 N.E.2d 705, which I believe states the logical and proper rule that an actual showing of substantial antagonism must be demonstrated before a defendant is entitled to separate counsel and separate trials. In *Dickens* we quoted with approval the following language from *People v. Chapman*, 66 Ill. App. 2d 124, 127, 214 N.E.2d 313, 315:

> "It is only when the interests of the joint defendants are *in fact* antagonistic that the court must grant separate trials or require separate legal representation. *People v. Dolgin*, 415 Ill. 434, 448, 114 N.E.2d 389 (1953). A finding of adverse interest or incompetency or incompatibility of counsel cannot be based solely on mere assertions. *People v. Wolff*, 19 Ill. 2d 318, 322, 167 N.E.2d 197 (1960). Unless defendant properly establishes that a conflict of interest actually exists, or this fact becomes apparent during the trial itself, the court will not indulge in speculation to determine whether separate counsel, in the interest of justice and a fair trial, is required. *People v. Rose*, 348 Ill. 214, 180 N.E. 791 (1932) and *People v. Bopp*, 279 Ill. 184, 116 N.E. 679 (1917)."

I do not believe that the "subtle effect," whatever that means, of some undescribed conflict of interest should be the basis for requiring separate counsel or separate trials. I would affirm defendant's conviction.