THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN MILLER, Defendant-Appellant.

First District (3rd Division)   No. 77-1873

Opinion filed December 27, 1978.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Rimas F. Cernius, and Terrence P. Gillespie, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant, John Miller, was charged with attempt murder and armed robbery. He was acquitted of attempt murder but a mistrial was declared on the charge of armed robbery. At the second trial, a jury found him guilty of armed robbery and the court sentenced him to four to eight years. Defendant contends on appeal that he was not proved guilty beyond a reasonable doubt; that the court erred in denying defendant's motion for a new trial after hearing a judicial confession of a third person that he, rather than defendant, participated in the crime; and that he was denied effective assistance of counsel when the public defender, representing him, was also appointed to represent a defense witness. The facts are as follows.

On March 5, 1976 at about 2:30 a.m., as Lloyd Dixie walked past an apartment building at 7350 South Phillips Avenue in Chicago, two men and a woman approached him. A man identified by Dixie as defendant approached from the side, displayed a gun, and announced a robbery. Dixie was thrown to the ground by the other two persons while defendant held the gun against Dixie's head. The robbers took his ring, a wallet containing $8, and various I.D. and union cards. Dixie also testified that as the assailants ran, he heard three shots. Dixie arose and, after walking a short distance away, met two police officers.

Dwayne Chapman testified he was standing in front of the apartment building as Dixie passed. He saw three individuals converge on Dixie and he witnessed the ensuing struggle. The trio arose and ran, stopping in front of Chapman as one turned and fired three shots toward Dixie. Immediately after, defendant warned Chapman that he better not have seen anything. Chapman saw the trio enter the apartment building and he walked to where Dixie was talking to the police officers. Chapman

informed the police that he recognized two of the assailants who lived in the building.

Officer Lemont Thompson of the Chicago Police Department testified that as he and his partner talked to Dixie, Chapman informed them of the home address of two assailants. The officers went to the apartment but were not admitted for about 10 minutes. Barbara Meyers then admitted them, and the officers observed three men, including defendant, in two beds. Defendant was partially dressed. The officers found Dixie's union card on the outside ledge of a window and found his other belongings on the street below the window. The officers also recovered $66 from under the mattress where defendant had been lying. Both eyewitnesses identified defendant at a lineup.

After the State rested, the assistant public defender representing defendant informed the court that he intended to call Alfred Myles as his first witness. The trial court was advised that Myles had been represented by the public defender in a previous case resulting in conviction and that he was being represented by the public defender in a pending murder charge. The court was further advised that Alfred Myles was going to testify that he had participated in the armed robbery in question. The court directed separate counsel from the public defender's office to be summoned to advise Alfred Myles of his constitutional rights. The latter assistant public defender objected to this appointment on the grounds there was a conflict of interest since the attorney calling the witness and the attorney advising him were from the same office. The court denied their request to appoint counsel other than the public defender with the observation that there was no conflict of interest. After Alfred Myles was advised by the public defender, Myles declined to testify on behalf of defendant. The court ordered Myles to testify when the assistant public defender representing defendant insisted on calling him as a witness. Myles took the stand and invoked his privilege against self-incrimination on the advice of his counsel.

Barbara Meyers testified for defendant that she had been in the apartment in question with defendant and a Ray Horton since 9 p.m. that evening. At about 2 a.m. Eddie Myles, Alfred Myles, and Felicia Allen entered her apartment. Alfred Myles left her apartment through a rear window just before the police arrived. Before she testified, she had not told anyone that Myles left through the window. She also testified that she had a personal relationship with defendant. Meyers stated she admitted the police only after they threatened to kick in the door. Horton testified that he and defendant were in Meyers' apartment from 9 p.m. until the police arrived. Alfred Myles left the apartment through a rear window when the police knocked on the door.

Eddie Myles testified that, along with his brother Alfred and Felicia Allen, he committed the armed robbery of Dixie. Defendant was asleep in the apartment during the robbery. Defendant testified that he did not participate in the subject robbery, and that he was in Meyers' apartment asleep. The Myles brothers arrived in the bedroom minutes before the police.

After the jury returned the verdict of guilty, the court entered judgment on the verdict and continued the matter for a presentence report. At that hearing, defense counsel presented a motion for a new trial and offered the testimony of Alfred Myles. The latter again was being advised by an assistant public defender and was informed of his constitutional rights. Alfred Myles testified that he had participated in the robbery with his brother and Allen. He further stated that defendant did not take part in thè robbery. The trial court denied the motion for new trial and in arrest of judgment, and imposed sentence.

Because we believe it to be dispositive of the appeal, we shall initially consider defendant's contention that he was denied effective assistance of counsel when he was represented by an assistant public defender while another assistant public defender was appointed to represent a defense witness with adverse interests. The State maintains that no conflict of interest existed and that advising Alfred Myles of his constitutional rights as a witness was not inconsistent with defendant's right to effective assistance of counsel. The State suggests that the assistant public defender ably represented defendant and that Alfred Myles' exercise of his constitutional rights did not prejudice defendant.

■■ The right to effective assistance of counsel is a fundamental right and entitles a defendant to the undivided loyalty of counsel. (*People v. Baxtrom* (1978), 61 Ill. App. 3d 546, 378 N.E.2d 182; *People v. Ishman* (1978), 61 Ill. App. 3d 517, 378 N.E.2d 179.) A defendant's right to effective assistance of counsel requires that his attorney not represent conflicting interests or undertake the discharge of inconsistent duties. (*People v. Kester* (1977), 66 Ill. 2d 162, 361 N.E.2d 569; *People v. McClinton* (1978), 59 Ill. App. 3d 168, 375 N.E.2d 1342.) In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must show an actual conflict of interest. *People v. Berland* (1978), 74 Ill. 2d 286.

■■ In our view, an actual conflict of interest occurred in the present proceedings and the assistant public defender correctly advised the trial court of the conflict resulting from his appointment to advise Alfred Myles. The trial court required the public defender to represent both defendant and Alfred Myles. Although the two men were represented by separate assistants, it was the public defender who was appointed to act as their attorney. As such, the public defender was obligated to fully and

completely represent the interests of each client. The assistant public defender representing defendant was obligated to call Alfred Myles for the purpose of showing that he, and not defendant, participated in the armed robbery in question, while the assistant public defender representing Alfred Myles was obligated to advise the witness not to answer any questions in order to avoid incriminating himself. To effectuate his obligations to defendant and to Alfred Myles, the public defender was placed in the position of having to fulfill his obligation to one client at the expense of the other. The public defender was not free to fully and completely represent both defendant and Alfred Myles because the interests of each were adverse and inconsistent on the issue of guilt. (*People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441.) Where an attorney's loyalty to a defendant is diluted by the attorney's obligation to others or divided by having to represent conflicting interests, the defendant has been denied the effective assistance of counsel. *People v. Kester.*

■■■ The State urges, however, that the public defender's only duty to Alfred Myles was to advise him of his rights concerning self-incrimination and that no prejudice to defendant could have resulted because the advice of private counsel would have been identical to that of the public defender. Whenever defense counsel's past or present commitments to others raise a conflict of interests, a *per se* rule of reversal will be invoked. (*People v. Meng* (1977), 54 Ill. App. 3d 357, 369 N.E.2d 549.) The mere existence of an actual conflict is sufficient to constitute a violation of defendant's rights and no showing of prejudice is required. (*People v. Stoval; People v. Grigsby* (1977), 47 Ill. App. 3d 812, 365 N.E.2d 481.) In the present case, the joint representation of conflicting interests denied defendant the effective assistance of counsel, and such denial is presumed to be prejudicial. (See *People v. Echols* (1978), 74 Ill. 2d 319.) We must remand the matter for a new trial.

In view of our holding, it is unnecessary to consider whether the court erred in denying defendant's motion for a new trial after hearing the judicial confession of a third person. With respect to defendant's contention that he was not proved guilty beyond a reasonable doubt, we believe that the testimony adduced at trial created an issue of fact for the jury to decide.

For the reasons stated, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

SIMON, P. J., and JIGANTI, J., concur.