THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES SIMMONS *et al.*, Defendants-Appellants.

Fifth District  No. 77-69

Opinion filed December 28, 1978.

1046

Michael J. Rosborough, of State Appellate Defender's Office, of Mt. Vernon, for appellants.

Nicholas G. Byron, State's Attorney, of Edwardsville (Robert C. Perry, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendants James Simmons, Ralph Simmons and Clarence Edward Evans were jointly indicted by the grand jury of Madison County for the offense of armed robbery. James pleaded guilty to the reduced charge of robbery and was sentenced to not less than three nor more than nine years in jail; while Ralph pleaded guilty to the offense of armed robbery and received a sentence of not less than four nor more than six years in jail. James directly attacked the judgment entered on his plea by filing a motion to withdraw his guilty plea pursuant to Supreme Court Rule 604(d) (Ill. Rev. Stat. 1975, ch. 110A, par. 604(d)). This motion was denied by the trial court and he appealed. He and Ralph collaterally attacked the judgments entered against them by filing a joint *pro se* petition for writ of *habeas corpus.* The trial court refused to grant their petition, and they appealed this decision. Additionally, they filed a joint *pro se* post-conviction petition seeking to vacate the judgments in accordance with section 122—1 *et seq.* of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, par. 122—1 *et seq.*). The denial of this petition precipitated yet another appeal. All these appeals have been consolidated for the purpose of this opinion due to the repetition and relationship of the issues and parties involved in the appeals.

The first issue for our consideration is whether James and Ralph have been denied their right to effective assistance of counsel. James and Ralph argue that their constitutionally protected right was infringed by conflicting commitments of their attorneys because both counsel were employed by the public defender's office and James and Ralph were pursuing antagonistic defenses. The State contends that the issue was waived because it was first raised in this court.

There were no significant differences in the factual bases offered by the State as a foundation for the guilty pleas of James and Ralph. The State was prepared to prove that on October 2, 1975, James, Ralph and

Clarence Evans robbed Walter Pedigo, an employee of Wayne's Men's Wear in Madison, Illinois, at gunpoint. The robbery occurred sometime between 12 m. and 1 p.m. Two customers were present in the store at the time, Mrs. Brown and Mrs. Szimeck. Pedigo was prepared to testify that Evans robbed him of some of his personal possessions and the store of some of its merchandise with the aid of James and Ralph. Mrs. Szimeck would identify Ralph as one of the robbers, while Mrs. Brown could identify James.

The State would also call witnesses who would testify that the three defendants were observed in the area prior to the robbery acting "suspiciously" in a vehicle registered to Ralph. Officer Brook, a Venice police officer, would testify that he heard a radio dispatch regarding the robbery and shortly thereafter saw Ralph's automobile proceed across a bridge into Missouri. Sometime later, in response to a radio dispatch received by the Madison County authorities, police officers from Hillsdale, Missouri, surrounded a residence in that city and arrested James, Ralph and Clarence Evans. They would testify that inside the house the proceeds of the robbery were discovered.

On October 3, James and Ralph were taken before a judge in St. Louis County and declined to waive extradition. On January 5, 1976, approximately 95 days after their initial appearance in St. Louis County, they were released from custody, apparently because the State of Illinois had failed to perfect a demand for extradition. They were thereafter re-arrested by the Missouri Highway Patrol on March 19 and booked in Madison County on the armed robbery charge on April 1. The record on appeal does not reflect the circumstances or procedures by which the defendants were transferred from Missouri to Illinois. On April 19, 1976, they were arraigned in Madison County and the public defender was appointed to represent them.

On June 8, a hearing was held on a motion to dismiss the charges against James and Ralph. At this same hearing they moved that their causes be severed. Both assistant public defenders who represented them at that time (Charles Weitzman for James and George Moran, Jr., for Ralph) indicated that the defenses were potentially antagonistic. The attorneys, however, stated that they could not go into the substance of what those defenses would be at that time. The court then denied the motion for severance.

Mr. Moran was allowed to withdraw as Ralph's counsel, and the public defender, Paul Riley, assumed Ralph's representation. On July 13, Ralph appeared in open court with his counsel for the purpose of entering a negotiated plea of guilty. In exchange for the plea of guilty the State was to recommend a sentence of four to six years in the penitentiary. It was

further understood and agreed, as established by statements made by the trial judge at the hearing, that Ralph maintained that he had not wielded a gun during the armed robbery, but understood he was nonetheless responsible for the actions of the co-defendant who did. The court further indicated that it would accept the State's sentence recommendation only if the presentence report reflected that Ralph's prior criminal record was consistent with representations made to the court at the time of the plea of guilty.

After advising Ralph of certain of his rights and the effects and consequences of a plea of guilty, and receiving the prosecutor's recital of the factual basis, the court accepted his plea and scheduled a sentencing hearing for July 30.

At a separate hearing before the same judge on the same day, James appeared with counsel, also for the purpose of entering a negotiated plea of guilty. It was agreed that James would plead guilty to the reduced charge of robbery and that the State would recommend a sentence of two to six years. The trial court emphasized that in this instance it would not be bound by the negotiations between the parties. The trial judge advised James that he reserved "the right to sentence you to what I think is a fair sentence, after I read your presentence report and after I have heard any evidence you want to put on in mitigation." After advising him of certain of his rights and the effects and consequences of a plea of guilty, the court accepted the plea. Separate sentencing hearings were conducted in which the trial court imposed a term of three to nine years upon James and a term of four to six years upon Ralph.

■■ Inherent in a defendant's sixth and fourteenth amendment right to effective assistance of counsel is the requirement that he receive the undivided loyalty of his counsel. (*Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457.) "In Illinois, where a defense counsel's past or present commitments to others involves interests which potentially conflict with those of the defendant, a *per se* rule of reversal has been applied without the necessity of a showing of any actual prejudice resulting thereby. (*People v. Stoval,* 40 Ill. 2d 109, 239 N.E.2d 441; *People v. Kester,* 66 Ill. 2d 162, 361 N.E.2d 569; *People v. Coslet,* 67 Ill. 2d 127, 364 N.E.2d 67.)" (*People v. Meng* (5th Dist. 1977), 54 Ill. App. 3d 357, 360-61, 369 N.E.2d 549, 551.) Although this *per se* rule of conflicts was originally applied by the courts to situations where a defense counsel's conflicting commitment was to someone not charged with the crime (*People v. Stoval* (the victim of the crime was a client of the court-appointed defense counsel's law firm); *People v. Coslet* (the court-appointed counsel represented the defendant being tried for murder and at the same time was retained by the administrator of the victim's estate)), this rule has been subsequently expanded to cover joint representation

situations, involving one attorney and multiple co-defendants, where the conflicting commitment was to a co-defendant (*People v. Frey* (5th Dist. 1977), 50 Ill. App. 3d 437, 365 N.E.2d 283; *People v. Halluin* (5th Dist. 1976), 36 Ill. App. 3d 556, 344 N.E.2d 579). However, the mere fact of joint representation, alone, is insufficient to establish the possibility of a conflict. (*Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173; *People v. Meng.*) Rather, a co-defendant must demonstrate additional facts which could support the inference that his attorney's commitment to one of his own co-defendants potentially conflicts with his own interests. *People v. Meng.*

■■ ■ Facts which indicate that the co-defendants were pursuing defenses antagonistic to each other would be sufficient to raise the possibility of a conflict where the co-defendants are jointly represented. (*People v. Baxtrom* (5th Dist. 1978), 61 Ill. App. 3d 546, 378 N.E.2d 182.) One possible ramification of antagonistic defenses is that an attorney may feel restrained from conducting a thorough direct examination of one co-defendant out of fear of implicating another co-defendant. "Where the circumstances raise the possibility of restraint, the application of a *per se* rule has been felt to be warranted in recognition of the fact that in most cases it is nearly impossible for a court to discern, or for a defendant to prove, or for a defense counsel to disprove, either the existence of subtle restraint in the counsel's representation or its consequent prejudicial impact. [Citations.]" *People v. Baxtrom* (1978), 61 Ill. App. 3d 546, 553, 378 N.E.2d 182, 188.

■ In the case at bar, James and Ralph were not represented by a single attorney, but each was represented by an assistant public defender. However, in instances where each co-defendant was represented by a separate counsel employed by the public defender's office, the representation has been treated for purposes of the *per se* rule of conflicts as if all of the co-defendants were represented by one attorney. (*People v. Meng; People v. Baxtrom.*) The rationale for this is grounded in the fact that when a public defender is appointed to represent an indigent defendant, it is the office of public defender itself which is appointed, this representation being either by the public defender personally or through his assistants. (*People v. Meng.*) Thus, even though indigent co-defendants are assigned separate assistant public defenders, they are being represented by one office, and this representation is analogous to joint representation by a single attorney. The same potential for conflict which plagues joint representation cases involving antagonistic defenses also afflicts the public defender's office, because where an assistant public defender elicits testimony from one co-defendant in order to exonerate him, the assistant at the same time may implicate a co-defendant being represented by a different attorney from the same office. This situation

intentionally or unintentionally forces the public defender's office to take sides, and, thereby, it cannot give its undivided loyalty to each co-defendant.

Relying on *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227, the State argues that James and Ralph waived the issue of denial of the right to effective assistance of counsel by failing to bring the issue to the attention of the trial court either prior to pleading guilty or in a motion to withdraw their guilty pleas pursuant to Supreme Court Rule 604(d). We agree.

In *Precup,* one public defender represented two of the three co-defendants at trial. On appeal, these two co-defendants argued that their defenses were so antagonistic that their counsel's ability to represent them was substantially impaired. This issue was never brought to the trial court's attention either before or during trial; nor was it mentioned as a basis for a new trial in their post-trial motion filed in accordance with section 116—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 116—1). In following *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856, which applied the waiver rule to constitutional as well as other issues, the supreme court held in *Precup* that the failure to raise a conflicts issue both at trial and in a motion for a new trial effectively waived that issue when it was raised for the first time in a reviewing court. The court then examined the conflicts issue for the limited purpose of determining whether the trial court's failure to appoint separate counsel constituted plain error so as to overcome the waiver rule. Supreme Court Rule 615(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a)) provides in part: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." "Before plain error can be considered as a means of circumventing the general waiver rule, it must be plainly apparent from the record that an error affecting substantial rights was committed." (*People v. Precup,* 73 Ill. 2d 7, 17, 382 N.E.2d 227, 231.) Determination of plain error necessarily involves a case by case analysis, and in *Precup,* no plain error was found.

In the instant case, James and Ralph failed to adequately inform the trial court of a possible conflicts issue prior to their pleading guilty. It may be argued that when Ralph moved for a separate trial on the ground of antagonistic defenses among James, Evans and himself, the trial court was sufficiently informed of the conflicts issue. At a hearing on a motion to dismiss in which James and Ralph were present, the trial court heard arguments concerning the motion to sever. The attorneys for James and Ralph, however, refused to inform the court of the facts which they felt had rendered the defenses of James and Ralph antagonistic. A mere conclusory statement that antagonistic defenses exist among co-

defendants who are represented by separate counsel from the same office, without a showing of any facts supporting such a claim, cannot support a contention that the trial court was informed of a possible conflict. Only when specific facts are presented to the trial court which demonstrate antagonistic defenses among co-defendants who are jointly represented, is the possibility of a conflict adequately raised in the trial court. *People v. Meng; People v. Baxtrom.*

■ James and Ralph also failed to raise the conflicts issue in the appropriate post-judgment motion and chose, instead, to pursue a collateral attack. In the present case the judgments were entered upon guilty pleas rather than a jury verdict, as was the case in *Precup.* Preservation of a conflicts issue through a Rule 604(d) motion to withdraw a guilty plea would be analogous to the preservation of a conflicts issue through a motion for a new trial under section 116—1 of the Code of Criminal Procedure, and would therefore fall within the ambit of *Precup.* Rule 604(d) provides:

> "No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to withdraw his plea of guilty and vacate the judgment. The motion shall be in writing and shall state the grounds therefor. * * * Upon appeal any issue not raised by the defendant in the motion to withdraw the plea of guilty and vacate the judgment shall be deemed waived." (Ill. Rev. Stat. 1975, ch. 110A, par. 604(a).)

Although James filed a motion to withdraw his guilty plea, no mention was made of any conflicts issue. Ralph did not even file a motion to withdraw his guilty plea. Therefore, in accordance with *Precup,* we hold that the failure of James and Ralph to raise the conflicts issue both before their guilty pleas and in a motion to withdraw their pleas operated to waive that issue before this court.

However, our disposition of this issue cannot cease at the initial determination of a waiver. As the court in *Precup* noted, plain error is an exception to the general waiver rule, and is defined as an error which affects substantial rights and is plainly evident from the record. The denial of effective assistance of counsel resulting from an attorney's failure to loyally represent a defendant would certainly affect substantial rights of the defendant. Therefore, we need only direct our attention to the record to ascertain whether an error was plainly evident.

■ Two factors militate against a finding that James and Ralph were denied effective assistance of counsel based on conflicting commitments of their attorneys. First, when questioned by the trial court about possible antagonistic defenses, their counsel declined to go into specifics. Second, the factual bases upon which the pleas were supported contained no

reference of projected testimony from either James or Ralph. This was not a case where one co-defendant pleaded guilty to avoid incriminating testimony from another co-defendant. (See *People v. Frey* (5th Dist. 1977), 50 Ill. App. 3d 437, 365 N.E.2d 283.) These two factors suggest that either no antagonistic defenses existed, or if they did exist, they had no influence on the decisions of James and Ralph to plead guilty. Our examination of the record reveals no conflicts error which is plainly evident. To the contrary, the record supports the inference that the attorneys for James and Ralph were able to represent them in their plea negotiations without compromising any client loyalty. Therefore, we are unable to say that the legal representation afforded James and Ralph constituted plain error so as to meliorate the harshness of the waiver rule. Accordingly, we hold that the issue pertaining to the denial of the right to effective assistance of counsel has been waived.

The second issue raised on appeal by James and Ralph is that they were denied effective assistance of counsel at their post-conviction proceedings. Subsequent to James' plea of guilty, his attorney, Mr. Weitzman, sought the trial court's permission to withdraw as James' counsel, because James filed a *pro se* petition for writ of *habeas corpus* which raised the issue of whether his attorney furnished effective representation during the plea negotiations. Mr. Weitzman was allowed to withdraw, and Mr. Robert Matoesian was then appointed to represent James. Mr. Matoesian was eventually appointed to represent Ralph as well. In support of their contention of ineffective representation, James and Ralph point out that their counsel did not amend any of the various *pro se* petitions, and did not have a complete transcript of all proceedings in his possession at the time of the various post-conviction hearings. However, they placed primary emphasis on the failure of their attorney to raise the issue of irregularities in their extradition from Missouri to Illinois.

The State maintains that the numerous collateral pleadings filed raised all possible issues and that amendments to the petitions were unnecessary; that there was no requirement that counsel be in possession of transcripts of all proceedings prior to the guilty pleas inasmuch as any irregularities in those proceedings would have been waived by the guilty pleas, and those proceedings were irrelevant to any issues which might have been raised following the guilty pleas; and that there was no tenable issue to be raised in regard to the alleged irregularities in James and Ralph's extradition.

■■ ■ With respect to the contention of extradition irregularities, our supreme court has made clear that raising the issue in the instant case would have been frivolous:

> " 'We have held that alleged irregularities in the manner in which a defendant is returned to this State on extradition for trial on a

criminal charge will not be inquired into, since these matters affect neither the guilt nor innocence of the accused nor the jurisdiction of the court to try him.' [Citations.] The power of a court to try a person for a crime is not impaired even by the fact that he had been brought within the jurisdiction by forcible abduction. [Citation.] Whether or not defendant voluntarily agreed to return to this State, the validity of the judgments entered against him here is not affected." (*People v. Pardo,* (1970), 47 Ill. 2d 420, 423, 265 N.E.2d 656, 658.)

This rule was applied by the appellate court in *People v. Scott* (2d Dist. 1972), 3 Ill. App. 3d 1063, 280 N.E.2d 1. Thus, there is no merit to the contention that either trial or post-conviction counsel was ineffective for failing to raise the extradition issue.

Next James and Ralph find fault with their post-conviction counsel because he failed to amend their *pro se* petitions. However, the numerous documents filed seem to have raised all possible issues. Indeed, even the extradition issue, which impressed James and Ralph on appeal, was set forth in one of the petitions. Although they claim counsel should have amended these pleadings, they do not enlighten us as to how the pleadings should have been amended or mention a single issue which should have been raised in the pleadings but was not.

██ █ Lastly, they claim that their counsel was necessarily ineffective because he did not, at the time of the post-conviction hearing, have complete transcripts of all prior proceedings. We know of no rule of law which holds that a full set of transcripts is an absolute prerequisite to effective representation on post-conviction matters. Moreover, counsel did have transcripts of the plea proceedings and sentencing hearings. These were the only transcripts which were relevant to the issues which could have been raised at post-conviction. It is, of course, well established that a voluntary plea of guilty waives all errors or irregularities that are not jurisdictional. (*People v. Brown* (1969), 41 Ill. 2d 503, 244 N.E.2d 159.) Obviously, what occurred at the hearings on their several motions to suppress evidence was of no import where they pleaded guilty and did not go to trial. Appellate counsel was in possession of transcripts of all proceedings which occurred in the case and no issue, other than the extradition issue, was suggested as being included in the transcripts which were not available to trial counsel at the time of the various post-conviction proceedings. Failure to have a full set of transcripts is not prima facie evidence of incompetent representation where James and Ralph on appeal can point to no tenable issue which counsel should have raised.

In their brief, defendants state that "the only reasonable conclusion from the record on appeal in this case is that the defendants were also not

effectively represented at this stage of the proceedings." A more reasonable conclusion would be that they had no meritorious issues to raise in a post-conviction petition. Therefore we hold that they were effectively represented in their post-trial proceedings. For the foregoing reasons, we affirm the judgments of the trial court.

Affirmed.

EBERSPACHER, P. J., and KARNS, J., concur.