THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PAT WILLIAMS, Defendant-Appellant.

Third District   No. 78-226

Opinion filed January 15, 1980.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

On March 31, 1978, defendant was convicted of unlawful delivery of a controlled substance after a bench trial in the Circuit Court of Peoria County. On appeal she contends that because her appointed attorney represented a co-defendant with conflicting interests, she did not receive effective assistance of counsel.

At trial, George Murray, an I.B.I. agent, testified that on August 31, 1977, he and an informant, Bill Lemons, went to apartment number 471 of the Harrison Homes in Peoria where they were admitted by a woman

whom Murray identified as defendant. When asked if she had any "preludins" for sale, the woman said that she did not, but that she would take the men to someone who did. Murray stated that he and Lemons followed the woman to apartment number 474.of the Harrison Homes. They entered the apartment which was occupied by Jo Ann Webber, also known as Jo Ann Bowman. The woman told Webber that the two men were customers. Webber then sold them eight pills containing the controlled substance for $40.

Webber, a co-defendant who had previously pled guilty and been sentenced, testified on behalf of defendant. During direct examination she stated that defendant never brought Murray to her apartment, and that, in fact, she had never seen Murray in the company of defendant. During cross-examination she stated that Pam Gorden was the woman who brought Murray and Lemons to her apartment on the date in question. Defense counsel interrupted the cross-examination a short time later to request that he be permitted to confer briefly with the witness in private. When asked by the court why he wanted to do so, he stated, "I don't think I can really indicate that now having represented her [the witness] in some matter." The court denied the request.

After the cross-examination of Webber had been completed, the court, having discussed the matter further with counsel, made the following statement:

> "On the record, the witness, Jo Ann Webber, or Jo Ann Bowman, was the client of Mark Rose, and Mark is the attorney for this [d]efendant. They are co-defendants in this case. Because of the testimony of Jo Ann Webber and because of cross-examination of Mr. Gaubas [the prosecutor], Mr. Rose * * * feels that Jo Ann Bowman should talk with an attorney before he cross-examines [*sic*] her. The Court does not know the specifics or even the generalities of the problem involved."

The court then appointed another lawyer to confer with the witness prior to redirect examination.

During the redirect examination the following colloquy occurred:

> "MR. ROSE: * * * Jo Ann, you have testified as to specific occurrences on the 31st of August, of last year, is that correct?
>
> A. Yes.
>
> Q. Now, do you specifically recall the individual referred to as Pam Gorden being present during that specific incident?
>
> MR. GAUBAS: Objection, your honor. It's been asked and answered.
>
> THE COURT: Overruled.
>
> MR. GAUBAS: Object further on the basis that he is impeaching his own witness.

MR. ROSE: I would indicate to the [c]ourt that the answer that was given caught me by total surprise.

THE COURT: I don't think this is impeaching its own witness [sic].

MR. ROSE: Mr. Gaubas is interested in obtaining a perjury conviction.

THE COURT: I have overruled the objection. She may answer the question.

MR. ROSE: You can answer that.

A. She was present at one time but I don't remember which time that she had come over to the house [sic]."

Webber then stated that defendant had never been at her apartment during a sale of drugs.

Defendant, testifying on her own behalf, denied that she had participated in the unlawful delivery of the drugs.

■■■ In *People v. Stoval* (1968), 40 Ill. 2d 109, 113, 239 N.E.2d 441, the Illinois Supreme Court adopted the rule that when a criminal defendant has not received the effective assistance of counsel because of counsel's representation of others whose interests conflicted with those of the defendant, the defendant is entitled to a reversal of his conviction even in the absence of a showing of actual prejudice. As the United States Supreme Court stated in *Glasser v. United States* (1942), 315 U.S. 60, 76, 86 L. Ed. 680, 702, 62 S. Ct. 457, 467, "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."

Since *Glasser*, our supreme court has extended the limits of that case and now requires the trial court to inquire further into the possibility of "conflicting interests." In *Holloway v. Arkansas* (1978), 435 U.S. 475, 489-90, 55 L. Ed. 2d 426, 438, 98 S. Ct. 1173, 1181-82, the court said:

"* * * Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. * * * Generally speaking, a conflict may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another. Examples can be readily multiplied. The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations has effectively sealed his lips on crucial matters.

* * * But in a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself

compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process." The question becomes, then, did the interests of defendant and Webber conflict in such a manner that defense counsel might have been restrained in his representation of defendant? *People v. Echols* (1978), 74 Ill. 2d 319, 385 N.E.2d 644; *People v. Coslet* (1977), 67 Ill. 2d 127, 133, 364 N.E.2d 67, 70.

Defense counsel apparently believed that because Webber testified during cross-examination that Pam Gorden was the individual who brought Murray and Lemons to her apartment on the date in question, Webber was in danger of being charged with perjury. Thus it was in Webber's interest to recant the testimony; yet, because such testimony identified Pam Gorden as the perpetrator of the crime with which defendant was charged, it was in defendant's interest for Webber not to recant it. Defense counsel could not champion the interests of Webber and defendant simultaneously.

The State, citing Disciplinary Rule 7—102(A)(4), of the Illinois Code of Professional Responsibility, contends that even if defense counsel had not represented Webber, he would have been under a duty to elicit from Webber a recantation of her prior testimony. Disciplinary Rule 7—102(A)(4) provides, "(A) In his representation of a client, a lawyer shall not: * * * (4) knowingly use perjured testimony or false evidence." Since independent counsel could not with propriety use Webber's testimony, the State argues, there was no conflict between the interests of defendant and Webber.

The fallacy of the State's argument is that defense counsel's duty to the court not knowingly to use false evidence may well have been different from his duty to his client, Webber, to protect her from the possibility of a perjury conviction. The source of defense counsel's concern that Webber was in danger of being charged with perjury is unclear. Defense counsel may well be precluded from stating the source of his concern for Webber.

In *Holloway*, the court said (435 U.S. 475, 487 n.11, 55 L. Ed. 2d 426, 436 n.11, 98 S. Ct. 1173, 1180 n.11):

> "11. This case does not require an inquiry into the extent of a court's power to compel an attorney to disclose confidential communications that he concludes would be damaging to his client. Cf. ABA Code of Professional Responsibility, DR 4—101(C)(2) (1969). Such compelled disclosure creates significant risks of unfair prejudice, especially when the disclosure is to a judge who may be called upon later to impose sentences for the ·

attorney's clients." See Illinois Code of Professional Responsibility, Disciplinary Rule 4—101(B)(1).

Although the interests of defendant could not have been pursued in disregard of counsel's duty to the court, they should not have been compromised by counsel's duty to a witness who had also been his client. *People v. Halluin* (1976), 36 Ill. App. 3d 556, 344 N.E.2d 579. See *People v. Miller* (1978), 67 Ill. App. 3d 415, 384 N.E.2d 1010.

■ The commitment of defendant's attorney to Webber prevented him from representing Pat Williams without reservation. We believe the appellant was denied the effective assistance of counsel and that such denial was prejudicial.

On petition for rehearing, it was noted that this cause should be remanded for further proceedings. Therefore, this cause is reversed and remanded for further proceedings.

For the foregoing reasons, the judgment of the Circuit Court of Peoria County is reversed and remanded.

Reversed and remanded.

STOUDER, P. J., and ALLOY, J., concur.